# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STAN BETTER and <br> YRC INVESTORS GROUP, <br> Individually and on behalf of all <br> others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> YRC WORLDWIDE INC., WILLIAM D. <br> ZOLLARS, MICHAEL SMID, TIMOTHY <br> A. WICKS and STEPHEN L. BRUFFET, <br><br> Defendants. | CIVIL ACTION <br><br> No. 11-2072-KHV |

## MEMORANDUM AND ORDER

Stan Better and the YRC Investors Group, individually and on behalf of all others similarly situated, bring a securities class action on behalf of purchasers of the common stock of YRC Worldwide Inc. ("YRC") between April 24, 2008 and November 2, 2009, against YRC, William D. Zollars, Michael Smid, Timothy A. Wicks and Stephen L. Bruffet. Plaintiffs allege that all defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder (Count I), and that the individual defendants violated Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) (Count II).[1] Plaintiffs allege that by disseminating materially false and misleading statements and/or concealing material adverse facts, defendants participated in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of YRC common stock. According to plaintiffs, the scheme (1) deceived the investing public regarding YRC's business, operations,

---

[1] This purported class action has not been certified pursuant to Rule 23 of the Federal Rules of Civil Procedure.

management and intrinsic value of common stock, (2) enabled defendants to artificially inflate the price of YRC shares, (3) caused plaintiffs and other members of the class to purchase YRC common stock at artificially inflated prices and (4) harmed investors when the previously undisclosed truth was revealed at the end of the class period. This matter is before the Court on <u>Defendants' Motion To Dismiss Amended Class Action Complaint</u> (Doc. #42) filed December 20, 2011. Defendants argue that the amended complaint should be dismissed because it (1) fails to plead a materially false or misleading statement with particularity as required by Rule 9(b), Fed. R. Civ. P., and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4; (2) fails to plead loss causation; and (3) fails to set forth particularized factual allegations establishing the requisite strong inference of scienter as to each defendant. For the following reasons, the Court overrules the motion.[2]

## **Legal Standards**

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. <u>Id.</u> at 679-80; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. <u>Iqbal</u>, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. <u>See id.</u>; <u>Hall v. Bellmon</u>, 935 F.3d 1106, 1110 (10th Cir. 1991). Plaintiffs bear the burden of framing

---

[2] On March 2, 2012, defendants filed <u>Defendants' Motion To Strike Certain Exhibits To Plaintiffs' Opposition To Defendants' Motion To Dismiss The Amended Class Action Complaint</u> (Doc. #46). Exercising its discretion, the Court overrules that motion.

their complaint with enough factual matter to suggest that they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. Twombly, 550 U.S. at 556. Plaintiffs make a facially plausible claim when they plead factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Plaintiffs must show more than a sheer possibility that defendants have acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Iqbal, 556 U.S. at 678. Similarly, where the well-pleaded facts do not permit the Court to infer more than a mere possibility of misconduct, the complaint has alleged – but has not "shown" – that the pleader is entitled to relief. Id. at 1950. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008)).

In the securities context, Rule 12(b)(6) dismissals have traditionally been difficult to obtain because the cause of action deals primarily with "fact-specific inquiries" such as materiality. Grossman v. Novell, Inc., 120 F.3d 1112, 1118 (10th Cir. 1997). Nonetheless, courts have not hesitated to dismiss where the alleged misstatements or omissions are plainly immaterial, where plaintiffs fail to allege with particularity circumstances that could justify an inference of fraud or where defendant has no duty to disclose the information allegedly omitted. Id. at 1118-19. Ultimately, courts must evaluate "the totality of the pleadings" to determine if plaintiffs have stated an actionable securities fraud claim. Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1092 (10th Cir. 2003).

Since the passage of the PSLRA, securities fraud actions are subject to pleading requirements which are significantly more stringent than those which apply to other civil cases. To survive a motion to dismiss, a securities fraud complaint must (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1), and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," id. § 78u-4(b)(2). In Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313 (2007), the Supreme Court prescribed a workable construction of the "strong inference" pleading standard. It first reiterated that a district court faced with a Rule 12(b)(6) motion to dismiss a Section 10(b) action must accept as true all factual allegations in the complaint. Id. at 322. Second, the Supreme Court admonished district courts to consider the complaint in its entirety and emphasized that the appropriate inquiry is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Id. at 322-23. Ultimately, the Supreme Court held that in determining whether the pleaded facts give rise to a strong inference of scienter, the district court "must take into account plausible opposing inferences" rationally drawn from the facts alleged and must engage in a "comparative evaluation" of those inferences. Id. at 314, 323.

> To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, i.e., of the "smoking-gun" genre, or even the "most plausible of competing inferences. . . ." Yet the inference of scienter must be more than merely "reasonable" or "permissible" – it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

Id. at 323-24 (internal citations omitted).

**Factual Allegations**

-4-

Fifty-five pages of the amended complaint catalog defendants' allegedly misleading statements during the class period, which spans more than 18 months between April 24, 2008 and November 2, 2009. Another 13 pages contain additional scienter allegations. The Court assumes all of the allegations to be true for purposes of this motion.

Stan Better and YRC Investors Group purchased common stock of YRC during the class period.[3] YRC is a Delaware corporation with its principal place of business in Overland Park, Kansas. YRC National Transportation unit offers a range of services for the transportation of industrial, commercial and retail goods, serving manufacturing, wholesale, retail and government customers.

William D. Zollars served as Chairman of the Board of Directors, Chief Executive Officer and President of YRC throughout the class period. Zollars signed and certified YRC's United States Securities and Exchange Commission ("SEC") filings, including its annual reports on Form 10-K and/or quarterly reports on Form 10-Q. Stephen L. Bruffet served as Chief Financial Officer and Executive Vice President of YRC from September of 2007 until October of 2008. He also signed and certified the YRC SEC filings. Timothy A. Wicks served as Chief Financial Officer and Executive Vice President of YRC from October of 2008 to October of 2009, and as President and Chief Operating Officer from October of 2009 to April of 2010. He likewise signed and certified the SEC filings. Michael Smid served as Operations Officer and President of YRC throughout the class period. Smid reported directly to Zollars and led the integration of Yellow Transportation, Inc. ("Yellow") and Roadway Express, Inc. ("Roadway") and was responsible for all YRC functions.

From information obtained from 17 confidential witnesses, plaintiffs allege that defendants made materially false and misleading statements and omissions that failed to disclose known,

---

[3] YRC Investors Group includes Frank Yonan, George Alexiou, Suzanne Alexiou, Robert Dodd and Bryant Holdings, LLC.

adverse true facts about YRC. Specifically, the positive statements and omissions concerned the purported success of the technical integration of Yellow and Roadway; the financial condition of YRC, including its cash flows, liquidity, revenues, compliance with credit agreements and payment of debt; the success of its customer relationships; and the adequacy of its internal controls.

In 2003, Yellow had acquired Roadway for approximately $966 million in a half cash-half stock transaction. Yellow assumed $140 million in net Roadway indebtedness, which brought the enterprise value of the acquisition to approximately $1.1 billion. The resulting entity, YRC, operated as two separate and distinct entities with separate customer bases, shipping software and revenue streams. In February of 2008, five years after the acquisition of Roadway, defendants decided to integrate the Yellow and Roadway technology platforms. Many analysts wondered why YRC waited five years to do so.

Most of the factual allegations contain a quotation from one or more of the confidential witnesses. All were YRC employees in some capacity, ranging from truck driver and roadway dispatchers to IT managers to department directors, with start dates as early as the 1980s and departures as late as September of 2011. YRC employed these individuals during some or all of the class period. In part, plaintiffs also base their allegations on the investigation of their counsel, which included a review of YRC SEC filings, regulatory filings and reports, and securities analysts' reports and advisories about the company. Plaintiffs provide the following thumbnail sketch of their allegations that defendants' statements were materially false and misleading when made because they omitted to disclose known, adverse true facts about the company:

> The Company's purported "successful" technical integration of Yellow and Roadway was deeply flawed and incomplete. Because the planned transition to the Yellow platform was so time-consuming and behind schedule, Defendants abruptly and covertly switched in July 2008 from converting all data to the Yellow system to converting all data to the outdated and antiquated Roadway system for the sole purpose of saving time;

-6-

> The Roadway integration platform "was suspect at best because the technology was old and limited, and the people who knew it were aging and were shrinking in numbers";
>
> The heavily-touted March 1, 2009, date for completion of the integration was not the result of the integration process running smoothly and/or ahead of schedule but rather a forced deadline mandated by the Company's lenders – Defendants knew that meeting the deadline was a literal impossibility, and YRC was forced to offer a massive 60% discount to all customers;
>
> The Company's IT department determined in or around February 2008 that the integration could not be completed before December of 2009;
>
> During the attempted integration, YRC lost massive quantities of customer information and user profiles, which resulted in huge inadvertent price increases for certain customers;
>
> Frustrated, unsatisfied and angry customers began abandoning their YRC contracts and commitments;
>
> YRC was forced to offer a whopping 60% across-the-board discount to all remaining customers in a panicked effort to placate irate customers;
>
> The Company's lending groups were exerting enormous pressure on and control over YRC's operations directly contributing to failure of the technical integration;
>
> Many YRC "trailers were only 10% full and a lot of lanes were not running full";
>
> YRC was in danger of violating its bank covenants because the YRC's technical integration could not be completed before December 2009, in violation of the lender-mandated March 2009 deadline. Ultimately, YRC did violate these covenants;
>
> YRC was in danger of missing revenue targets that would trigger the lenders to pull the bank covenants and YRC ultimately failed to comply with its credit agreement;
>
> The Company suffered from internal control problems so severe that employees literally could not keep track of the vast majority of customer data and profiles, resulting in inadvertent overcharges, customer anger, frustration, and departures, and deep discounting; and
>
> The Company was performing so far below expectations and suffering from so many fundamental problems that a year prior to the end of the Class Period the Company commenced working on a desperate, last-ditch deal to convert

-7-

> hundreds of millions of dollars of debt into shares of stock. One analyst was so surprised when the deal was revealed on November 2, 2009 that he responded: "I didn't see the train wreck hitting the school bus full of kids and nuns."

<u>Amended Class Action Complaint For Violations Of Federal Securities Laws</u> (Doc. # 38) filed October 21, 2011 at 3-5.  Plaintiffs catalog 28 separate statements made by one or more defendants throughout the class period that collectively concealed this adverse information from YRC investors throughout the class period.  Many of these statements were in the form of company releases, and several more were in conference calls which Zollars conducted with analysts and investors.  On November 2, 2009, when defendants' earlier misrepresentations and omissions were fully revealed to investors, shares of YRC stock fell 64% on a single trading day, over $2.30 per share.  More than five times the stock's average daily volume over the past three months – a total of 54.8 million shares – traded that day.  This precipitous decline was evidence that YRC stock had been artificially inflated, and plaintiffs and other class members suffered economic loss after the company revealed the truth in a release dated November 2, 2009 and the market absorbed the news.

## **Analysis**

To state a claim that defendants made material misrepresentations or omissions in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, plaintiffs must show (1) material misrepresentation or omission by defendants; (2) scienter;[4] (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.  <u>Matrixx Initiatives, Inc. v. Siracusano</u>, 131 S. Ct. 1309, 1317 (2011).  Defendants assert that plaintiffs have not properly stated a claim because some of the statements which they challenge are legally inadequate and

---

[4] Scienter refers to the defendant's intention to deceive, manipulate or defraud.  <u>Ernst & Ernst v. Hochfelder</u>, 425 U.S. 185, 193 n.12 (1976).

plaintiffs fail to plead that the remaining statements are materially false or misleading, and because plaintiffs have not pleaded loss causation and scienter.

To state a prima facie case of control person liability under Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a), plaintiffs must establish (1) a primary violation of the securities laws and (2) control over the primary violator by the alleged controlling person. Adams, 340 F.3d 1083, 1107 (10th Cir. 2003). To show the second element, plaintiffs must point to facts which indicate that defendants had "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." Maher v. Durango Metals, Inc., 144 F.3d 1302, 1305 (10th Cir. 1998). Defendants make no separate argument with respect to Count II under Section 20(a), but instead contend that plaintiffs cannot state a Section 20(a) claim because they failed to plead a primary securities violation.

## I. Material Misrepresentation Or Omission

Defendants devote most of their argument to the sufficiency of plaintiffs' factual allegations with respect to material misrepresentations and omissions. Defendants argue that many of defendants' statements are not actionable and that plaintiffs do not allege that the remaining statements are materially false.

### A. Statements Of Corporate Optimism

Defendants assert that many of the statements which plaintiffs recite cannot be materially misleading because they are vague statements of corporate optimism that reasonable investors do not rely on in making investment decisions. Such statements, known as "puffery," are immaterial as a matter of law. See In re Semgroup Energy Partners, L.P., 729 F. Supp. 2d 1276, 1293-94 (N.D. Okla. 2010). The materiality of an optimistic statement, however, must be evaluated in light of the

"total mix" of information available to the market, TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976), and optimistic statements may be actionable if material, nondisclosed information undermines their truth, In re Semgroup, 729 F. Supp.2d at 1294. Defendants point to examples of puffery, including the following: "We believe that we have turned the corner"; "we are encouraged by our progress"; "discussions with our banks . . . remain very productive" and; "we're staying keenly focused on customer satisfaction." Defendants' Motion To Dismiss (Doc. #42) at 13-14.

Plaintiffs contend that these snippets are merely part of longer statements that when viewed in their entirety and in context, served to mislead investors by painting too bright a picture of YRC's financial health and customer satisfaction. For example, the statement that "we believe that we have turned the corner" is part of a longer statement contained in a YRC release dated April 24, 2008 (reproduced in plaintiffs' amended complaint) which announced the YRC 2008 first quarter results. The statement includes the following:

> "Despite the macroeconomic challenges that we are facing, we believe that we have turned the corner and expect meaningful earnings improvement starting with the current quarter," Zollars continued . . . . "Based upon the internal actions the company has already implemented, including securing a more competitive labor contract, renewing its credit agreement, and making footprint changes at YRC Regional Transportation, YRCW[5] expects to earn between $.30 and $.40 per share in the second quarter, which ends June 30, 2008.

Amended Class Action Complaint (Doc. # 38) ¶19. Plaintiffs argue that "meaningful earnings improvement" and specific earnings projections are detailed statements about YRC's performance, not mere vague statements of optimism. Plaintiffs further argue that defendants had no reasonable basis to expect "meaningful earnings improvement" or to expect earnings between $.30 and $.40 per share in the second quarter, and therefore the statement as a whole is materially false and misleading. See Grossman v. Novell, Inc., 120 F.3d 1112, 1120 n.6 (10th Cir. 1997) (statement as

---

[5] YRCW is the acronym for the company's full name, YRC Worldwide, Inc., which the parties shorten to YRC.

-10-

to beliefs or opinions may be actionable if opinion known by speaker when expressed to be untrue or have no reasonable basis in fact).

Likewise, in a statement discussing the integration of Yellow and Roadway, defendants argue that the following statement is mere puffery: "[W]e are confident about the things we can control and our ability to weather the things we cannot. Most importantly, we remain focused on providing exceptional service to our customers." This statement is part of a letter that Zollars wrote on October 29, 2008, which also contains the following:

> As we look ahead, we believe our biggest opportunity to enhance service and improve efficiencies is the accelerated integration of Yellow and Roadway, and we're in the process of combining the operational networks and the local sales teams of these two brands. We're pleased that our valued customers and our employees are supportive . . . . In closing, I want to assure you that we are confident about the things we can control and our ability to weather the things we cannot. Most importantly, we remain focused on providing exceptional service to our customers.

Amended Class Action Complaint (Doc. # 38) ¶ 44. Plaintiffs allege that the statement as a whole is not puffery for three reasons: (1) when Zollars made the statement, YRC had no reasonable basis to believe that "our biggest opportunity to enhance service and improve efficiencies is the accelerated integration of Yellow and Roadway"; (2) the statement is materially false and misleading because the integration actually increased technical inefficiencies; and (3) the phrase "our valued customers and our employees are supportive" is false and misleading because many YRC customers did not support the integration.[6]

Plaintiffs have adequately alleged how the statements at issue were materially misleading

---

[6] The Tenth Circuit Court of Appeals has examined allegedly materially false or misleading statements in a complaint that involved integration by defendant company with a company it acquired. In re Level 3 Commc'ns, Inc. Sec. Litig., 667 F.3d 1331 (10th Cir. 2012). The court listed four statements (paraphrased here) as being particularly concrete and thus potentially actionable: (1) the majority of the integration is complete, ahead of plan and under budget; (2) a majority of physical network interconnections are complete; (3) we are 85%, 90% done with those efforts; and (4) most of the physical integration is now complete. Id. at 1340. These statements are similar to many in plaintiffs' amended complaint.

-11-

to investors. The Court therefore rejects defendants' contention that the statements were immaterial as a matter of law.

### B. Statements That Show Disagreement With Management

Defendants argue that a number of plaintiffs' claims are based on factual allegations that at their core are complaints about corporate mismanagement, which is not a proper subject of Rule 10b-5 litigation. See Santa Fe Indust., Inc. v. Green, 430 U.S. 462, 479 (1977) (Rule 10b-5 does not regulate transactions "which constitute no more than internal corporate mismanagement"). As examples, defendants point to the following allegations: (1) a confidential witness asserted that a particular sale-leaseback transaction was a poor business decision because the rent was too high; (2) another confidential witness stated that, according to daily reports, management's comprehensive plan was "not doable," and that statements relating to efforts to implement the comprehensive plan were false; and (3) confidential witnesses disagreed with YRC's decision to shift the integration from Yellow's technology to Roadway's.

The Court rejects the notion that it should examine each of these statements in isolation, as the proper approach is to accept all of plaintiffs' allegations as true and to review them collectively. See Level 3, 667 F.3d at 1341. When so viewed, it is apparent that the statements allege more than disagreement with mismanagement. For example, the sale-leaseback comment was part of plaintiffs' complaint that defendants falsely portrayed the integration of Yellow and Roadway as successful, but that confidential witnesses described it as otherwise. One witness stated that in early 2009, it was obvious that YRC was in trouble because it sold its shipping terminals and leased them back from a direct competitor – something that would not have happened following complete integration. The witness described the lease-back agreement as "so bad that within six years the rent paid would equal the amount paid for the terminals." Amended Class Action Complaint (Doc. #38) ¶ 110. Plaintiffs' statement from a confidential witness that Zollars's comprehensive plan was

-12-

"not doable" is part of the amended complaint's allegations of scienter, in which plaintiffs point out the meetings and reports that showed the company was not performing well and that this information was widely available within the company. Taking the allegations as a whole, the Court determines that plaintiffs have done more than simply set forth disagreements with management decisions.

### C. Adequacy Of Remaining Statements

Defendants argue that the remaining allegations in plaintiffs' amended complaint do not properly plead that defendants made materially false statements at any time during the class period. They assert that statements regarding corporate performance, the company's lenders and technical integration are not false and therefore are not actionable. Indeed, defendants devote many pages of argument to pointing out specific issues as to which they contend plaintiffs have not properly pleaded false statements, and they offer alternative meanings or inferences for some of those statements.

Bearing in mind that this matter is before the Court on a motion to dismiss, the Court has carefully considered each of defendants' challenges. As defendants implicitly acknowledge in their reply brief,[7] the standards differ somewhat in reviewing allegations of falsity and of scienter. When considering the issue of falsity at the Rule 12(b)(6) stage, the Court is to draw all reasonable inferences in favor of plaintiffs. Level 3, 667 F.3d at 1343. If plaintiffs adequately allege that defendants made statements "that a reasonable person would understand as inconsistent with the facts on the ground," id., the Court must overrule the motion. Defendants, however, make falsity

---

[7] In their argument on the PSLRA's legal standards, defendants point out that the Court is not to draw all reasonable inferences in plaintiffs' favor as to scienter. Defendants' Reply Brief In Support Of Their Motion To Dismiss Amended Class Action Complaint (Doc. #50) filed April 2, 2012 at 5. Defendants thus appropriately distinguish the standards by which the Court reviews allegations of falsity and scienter.

-13-

arguments that are geared to the standard for scienter, where the Court grants no such deference. See Tellabs, 551 U.S. at 324.

In addition, defendants point to two statements that they assert do not contradict YRC's public announcements and thus are not false. The first is a statement by a confidential witness that Zollars told employees in October of 2008 that it was a "guarded secret" that YRC was "in danger" of missing revenue targets and that banks would "pull their notes." The second is a statement by another confidential witness that, in a November 2008 town hall meeting, Zollars stated that YRC was "fighting to survive." According to defendants, YRC made extensive disclosures about the financial difficulties it was facing, so these two statements do not advance plaintiffs' cause. Plaintiffs respond by challenging the extent of defendants' disclosures and by arguing that once defendants made such disclosures, they had a duty to speak truthfully and make such additional disclosures as necessary to avoid rendering the statements misleading.

Defendants miss the point with the "guarded secret" and "fighting to survive" comments. These are not statements that plaintiffs contend are materially false and misleading. On the contrary, plaintiffs assert that defendants made these truthful statements in private but continued to publicly conceal them, instead stating that YRC "expect[ed] to remain in full compliance with all terms of its credit agreement," Amended Class Action Complaint (Doc. #38) ¶ 31 and that negative commentary amounted to "noise" and "speculation and misinterpretation," id. ¶ 39, thereby suggesting that analyst reports of YRC financial troubles were untrue.

Throughout its falsity argument, defendants would have the Court read isolated sentences or phrases out of context, without considering the entire statement. While plaintiffs clearly are held to a higher standard of pleading by virtue of the PSLRA, 15 U.S.C. § 78u-4(b)(1), the PSLRA did not add to the elements required to plead a 10b-5 cause of action. Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1095 (10th Cir. 2003).

-14-

Defendants contend that plaintiffs' amended complaint fails to satisfy the stringent pleading requirements of Rule 9(b), Fed. R. Civ. P., and the PSLRA as to each alleged misrepresentation. For substantially the reasons as stated in plaintiffs' brief, the Court finds that plaintiffs have cited with particularity the facts upon which they base their allegations. Plaintiffs have identified the individuals, the specific misrepresentations, the dates and the media that defendants used for the misrepresentations. The Court has followed the Tenth Circuit's directive to apply a common-sense, individualized approach in determining whether plaintiffs have alleged securities fraud with the requisite particularity, see Adams, 340 F.3d at 1102, and concludes that plaintiffs have satisfied the falsity pleading requirements of Rule 9(b) and the PSLRA.

## II.     Loss Causation

The PSLRA imposes on plaintiffs the burden of proving that defendants' misrepresentations caused the loss for which they seek to recover. 15 U.S.C. § 78u-4(b)(4). The statute does not impose requirements beyond those of Rule 8(a)(2), Fed. R. Civ. P., with respect to pleading proximate cause; plaintiffs need only include a short and plain statement of their claims showing that they are entitled to relief. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). The Supreme Court has made it clear, however, that a complaint does not adequately state the loss causation element unless it provides defendants with fair notice of what plaintiffs' claim is and the grounds upon which it rests. Id.

Defendants argue that the amended complaint should be dismissed because it fails to adequately plead loss causation.[8] They contend that plaintiffs have not shown how defendants' corrective disclosure of November 2, 2009 had any connection to any false statement, and without

---

[8] Defendants do not challenge the prong of the causation requirement referred to as "transaction causation," which requires plaintiffs to show reliance on the false statements. See Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179, 2186 (2011).

such a link the amended complaint should be dismissed.  Plaintiffs agree that Dura is the controlling authority on pleading loss causation and argue that they have met the requirements by alleging that (1) the price of YRC stock was inflated during the class period due to defendants' nondisclosure of YRC failures in the technical integration of Yellow and Roadway; (2) YRC's financial condition was deteriorating, including hampered cash flows, liquidity and revenues, noncompliance with credit agreements and debt repayment problems; (3) YRC lost customer relationships; (4) YRC's internal controls were inadequate; and (5) when YRC publicly revealed the previously undisclosed information about its dire financial condition on November 2, 2009, in a press release announcing a debt conversion plan which placed 95% of its equity in the hands of its debtors, shares of YRC stock plummeted and investors were harmed.

Plaintiffs have complied with the requirement that the amended complaint must "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind."  Id. at 347.  The amended complaint satisfies Rule 8(a)(2) with respect to loss causation.

**III.     Scienter**

The PSLRA heightens the plaintiffs' pleading requirement with respect to scienter. It states in relevant part the following:

> [I]n any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2)(A). A Section 10(b) cause of action requires scienter, defined as defendants' intention to deceive, manipulate or defraud. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976). To determine whether plaintiffs have alleged facts that give rise to the requisite "strong inference" of scienter, this Court "must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, i.e., of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'" Tellabs, 551 U.S. at 323-24 (internal citation omitted). A complaint will not survive unless a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. Id. at 324. In its review, this Court must consider the amended complaint in its entirety and determine whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, and not whether any individual allegation, scrutinized in isolation, meets that standard. Id. at 322-23.

In line with these directives, the Court has carefully considered the amended complaint and defendants' argument that the pleading falls short of adequately pleading scienter. As plaintiffs highlight, the amended complaint contains a number of specific allegations of scienter. They include the following: (1) Zollars publicly admitted that YRC had been talking about the exchange offer plan for "most of the year" prior to its disclosure; (2) Zollars, Smid and Wicks admitted the

-17-

failed integration and poor financial state of the company at internal meetings; (3) 17 high-level witnesses corroborate defendants' knowledge and/or reckless disregard of the true facts they concealed throughout the class period; (4) reports of internal documentation and emails that reflect YRC's true concealed problems were provided directly to defendants on a regular basis throughout the class period; (5) defendants insisted on employees signing confidentiality agreements to keep secret the company's true adverse condition and the problems with and ultimate failure of the integration; and (6) the individual defendants were financially motivated to conceal the truth by stock bonuses of up to 200 per cent of their salaries if the company achieved certain performance objectives.  See id. at 325 (personal financial gain may weigh heavily in favor of scienter inference).

Defendants also argue that plaintiffs have not alleged how each of the individual defendants acted with scienter or took actions evincing a wrongful state of mind.  Plaintiffs respond by listing the instances in which confidential witnesses tell how the individual defendants had first-hand knowledge (through written reports, meetings, email, etc.) of the company's poor financial state, the myriad problems with integration and trouble with its lenders.  Plaintiffs also point out that Zollars, Bruffet and Wick signed SEC filings during the class period, which plaintiffs allege contain materially false and misleading statements and omissions concerning (1) positive statements and omissions concerning the purported success of the technical integration of Yellow and Roadway; (2) YRC's financial condition, including its cash flows, liquidity, revenues, compliance with credit agreements and payment of debt; (3) the success of its customer relationships; and (4) the adequacy of YRC's internal controls.

The amended complaint separately lists factual allegations with respect to scienter, and for each allegation plaintiffs list the source along with details of defendants' knowledge and public statements that concealed problems with integration, revenue and lenders.  Amended Class Action Complaint (Doc. #38) at 63-75.  Plaintiffs also allege that the individual defendants were motivated

-18-

to issue materially false and misleading statements in order to keep YRC common stock at artificially inflated prices because YRC executives could be awarded bonuses in company stock in an amount of 25% to 200% of their salary if the company achieved certain performance objectives.

Many of plaintiffs' allegations indicate that individual defendants had access to information or authority to influence events by virtue of their positions of control and authority as company officers and/or directors. Defendants argue that such allegations are insufficient under City of Philadelphia v. Fleming Companies, Inc., 264 F.3d 1245, 1264 (10th Cir. 2001) (rejecting as unsupported and conclusory allegations that individuals knew about fraudulent business practices by virtue of company positions and responsibilities). If the amended complaint went no further, the Court would agree. Here, however, the amended complaint specifies how the individual defendants gained the relevant information, what their responsibilities were for reporting and gathering accurate information by virtue of their positions and their failures to abide by their responsibilities. Thus, plaintiffs have gone beyond alleging that the individual defendants must have known certain information. Plaintiffs include allegations that suggest a strong inference that the individual defendants knew the information was material and that, absent disclosure, investors would be misled. Such allegations satisfy Fleming. See Sprint Corp. Sec. Lit., 232 F. Supp. 2d 1193, 1223-25 (D. Kan. 2002) (allegations that senior management had access to information not insufficient where plaintiffs also allege motive of collecting stock options that is highly relevant to scienter).

The Court concludes that plaintiffs have stated particularized facts sufficient to plead the strong inference of scienter as to each defendant.

**IT IS THEREFORE ORDERED** that Defendants' Motion To Dismiss Amended Class Action Complaint (Doc. #42), filed on December 20, 2011, be and hereby is **OVERRULED**.

Dated this 25th day of September, 2012 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u><br>
KATHRYN H. VRATIL<br>
United States District Judge