## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STAN BETTER and )<br>YRC INVESTORS GROUP, )<br>Individually and on behalf of all )<br>others similarly situated, )<br> )<br> Plaintiffs, )<br> )<br>v. )<br> )<br>YRC WORLDWIDE INC., WILLIAM D. )<br>ZOLLARS, MICHAEL SMID, TIMOTHY )<br>A. WICKS and STEPHEN L. BRUFFET, )<br> )<br> Defendants. )<br>_____) | CIVIL ACTION<br><br>No. 11-2072-KHV |

## MEMORANDUM AND ORDER

Stan Better and the YRC Investors Group bring this securities class action on behalf of all who purchased common stock of YRC Worldwide Inc. ("YRC") between April 24, 2008 and November 2, 2009.  They bring suit against YRC and four former YRC executives – William D. Zollars, Michael Smid, Timothy A. Wicks and Stephen L. Bruffet.  Plaintiffs allege that all defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 (Count I).  They allege that the individual defendants violated Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) (Count II).  Plaintiffs say that by disseminating materially false and misleading statements and/or concealing material adverse facts, defendants participated in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of YRC common stock.  This matter comes before the Court on plaintiffs' Unopposed Motion For Preliminary Approval Of Class Action Settlement ("Motion For Preliminary Approval") (Doc. #76) filed May 31, 2013.  They seek preliminary class certification, preliminary settlement approval, preliminary approval of the proposed class notice to the class and appointment

of lead class counsel.  On this record, plaintiffs have not satisfied their burden of showing that the class satisfies Rule 23, Fed. R. Civ. P., or that the settlement is fair and reasonable.  The Court therefore overrules the motion.

### Factual And Procedural Background

Plaintiffs bring class action claims that defendants engaged in a scheme to deceive the market regarding its purported success, which artificially inflated the stock of YRC.  The amended complaint alleges that defendants made numerous materially false and misleading statements and omissions during the class period that related to the purported strength of YRC.  Plaintiffs say that these statements deceived the investing public regarding the business, operations and management of YRC and the intrinsic value of its common stock, which caused them and class members to purchase YRC stock at artificially inflated prices.  Plaintiffs allege that they were harmed when the stock price dropped after the truth came out.  Defendants have vigorously contested, and continue to deny, plaintiffs' claims.

After extensive litigation and discovery, the parties mediated the case with retired Judge Edward A. Infante, in San Francisco, California.  On April 15, 2013, during mediation, the parties agreed to settle.  On May 31, 2013, the parties notified the Court that they had agreed in principle to a settlement.

Plaintiffs now ask the Court to preliminarily certify a settlement class, approve the settlement, and approve the proposed notice to the class.  They request certification of the following class:

[A]ll Persons (including, as to all such Persons, their beneficiaries) who purchased or otherwise acquired the common stock of YRCW between April 24, 2008 and November 2, 2009, inclusive.  Excluded from the Class are the Defendants; any officers or directors of YRCW during the Class Period and any current officers or

directors of YRCW; any corporation, trust or other entity in which any Defendant has a controlling interest; and the members of the immediate families of William D. Zollars, Michael Smid, Timothy A. Wicks, and Stephen L. Bruffet and their successors, heirs, assigns, and legal representatives.  Also excluded from the Class are those Persons who timely and validly request exclusion from the Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action.

Motion For Preliminary Approval (Doc. #76) at 18-19; Stipulation Of Settlement (Doc. #77) filed May 31, 2013 at 3 ¶ 1.17.

Under the settlement, in exchange for a full release of any and all claims that could arise out of the facts alleged in this action, defendants will pay $11,000,000 into a settlement fund which an escrow agent will administer.  See Stipulation Of Settlement (Doc. #77) at 5-6 ¶ 1.33 ("Released Claims"), 6 ¶ 1.36 ("Settlement Fund").  Once the fund is established, the escrow agent may allocate settlement funds to pay costs and expenses reasonably incurred in connection with providing notice to the Class, locating class members, administering the claims process and distributing the settlement fund to claimants.  See id. at 17 ¶ 2.9, 26-27 ¶ 5.2.  Paragraph 2.9 of the settlement agreement allows the agent to spend up to $300,000 for effectuating notice while Paragraph 5.2 allows the agent to spend up to only $150,000.  Compare id. at 17 ¶ 2.9 with id. at 26-27 ¶ 5.2.  The parties do not explain this discrepancy.

After deducting the costs of notice, taxes, attorney fees and payments to lead plaintiffs, the remaining proceeds of the settlement fund will be distributed to the class members who submit a valid claim in accordance with the proposed plan of allocation.  The plan of allocation states as follows:

For shares purchased between April 24, 2008 and April 22, 2009, inclusive, and sold before April 23, 2009, recognized loss per share is $0.00.

For shares purchased between April 24, 2008 and April 23, 2009, inclusive, and held on January 30, 2010, recognized loss per share is the lesser of:

     A.    $1.94.
     B.    The price paid less $1.29.

For shares purchased between April 24, 2008 and April 23, 2009, inclusive, and sold between November 2, 2009 and January 30, 2010, inclusive, recognized loss per share is the lesser of:
     A.    $1.94.
     B.    The price paid less $1.29.
     C.    The price paid less the price received.

For shares purchased between April 24, 2008 and April 23, 2009, inclusive, and sold between April 24, 2009 and November 2, 2009, inclusive, recognized loss per share is the lesser of:
     A.    $.035.
     B.    The price paid less $3.46.
     C.    The price paid less the price received.

For shares purchased between April 24, 2009 and November 2, 2009, inclusive, and held on January 29, 2010, recognized loss per share is the lesser of:
     A.    $1.59.
     B.    70% of (the price paid less $1.29).
     C.    The price paid less the price received.

For shares purchased between April 24, 2009 and November 2, 2009 and sold between November 2, 2009 and January 29, 2010, inclusive, recognized loss per share is the lesser of:
     A.    $1.59.
     B.    70% of (the price paid less $1.29).
     C.    The price paid less the price received.

<u>Notice Of Pendency</u> (Doc. #77-2) filed May 31, 2013 at 14-15 (¶ 1-8).

Plaintiffs estimate that if class members submit claims for all eligible shares, the average per-share benefit after deduction of court-awarded fees and expenses will be 11 cents. Class members whose pro rata shares of the settlement fund are less than $10.00 will not receive distributions. If any balance remains in the settlement fund six months after the date of distribution, the balance will be reallocated among the claimants who have cashed checks from the first distribution and would receive at least $10.00 from the redistribution. If funds remain in the settlement account six months

after the redistribution, the remaining balance will be contributed to an "appropriate" non-profit organization selected by lead plaintiffs and approved by the Court.

### Analysis

Plaintiffs seek an order that (1) preliminarily certifies a settlement class; (2) preliminarily approves the proposed settlement with YRC; (3) approves and directs notice to the settlement class; (4) appoints settlement class counsel; and (5) sets a date and time for a fairness hearing.  Defendants do not oppose the motion.

As noted above, plaintiffs bring two claims.  As to all defendants, plaintiffs allege violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.  As to the individual defendants, plaintiffs allege violations of Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a).

To prevail on their claim that defendants made material misrepresentations or omissions in violation of Section 10(b) and Rule 10b-5, plaintiffs must show (1) a material misrepresentation or omission by defendants; (2) scienter, i.e. intent to deceive, manipulate or defraud; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.  Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309, 1317 (2011).  To show reliance, plaintiffs depend on the fraud-on-the-market theory, see Amended Class Action Complaint For Violations Of Federal Securities Laws (Doc. #38) at 80-81, which allows certain securities fraud plaintiffs to invoke a rebuttable presumption of reliance on material misrepresentations aired to the general public.  Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1192 (2013) (citing Basic Inc. v. Levinson, 485 U.S. 224 (1988)).  In turn it "facilitates class certification by recognizing a rebuttable presumption

of classwide reliance on public, material misrepresentations when shares are traded in an efficient market." Id. at 1193. To trigger the rebuttable presumption under the fraud-on-the-market theory, plaintiffs must show that the alleged misrepresentations or omissions were material and publicly known, the stock traded on an efficient market and the transactions took place between the time defendants made the misrepresentations and the time the truth came out. Id. Although plaintiffs must prove publicity, market efficiency and the timing of plaintiffs' transactions at the class certification stage, they need not prove materiality at this stage. Id. at 1197-99. They need only show that the question of materiality is common to the class.

To prevail on their claims of control person liability under Section 20(a), plaintiffs must establish (1) a primary violation of the securities laws and (2) control over the primary violator by the alleged controlling person. Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1107 (10th Cir. 2003). To show "control," plaintiffs must point to facts which indicate that individual defendants had "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." Maher v. Durango Metals, Inc., 144 F.3d 1302, 1305 (10th Cir. 1998).

## I.    Preliminary Settlement Class Certification

### A.    Class Certification Standards

The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011). Whether to certify a class is left to the broad discretion of the trial court. Shook v. El Paso Cnty., 386 F.3d 963, 967 (10th Cir. 2004). The Court must conduct a rigorous analysis to determine whether the parties seeking certification have shown that the putative class satisfies the prerequisites

6

of Rule 23.  <u>Dukes</u>, 131 S. Ct. at 2551.  While Rule 23 does not give the Court license to conduct

free-ranging merits inquiries at the certification stage,  the merits of a suit "may be considered to the

extent – but only to the extent – that they are relevant to determining whether the Rule 23

prerequisites are satisfied." <u>Amgen</u>, 133 S. Ct. at 1194-95.

   As the party seeking class certification, plaintiffs have the burden to prove that the

requirements of Rule 23 are met.  D. Kan. Rule 23.1(d); <u>Shook</u>, 386 F.3d at 968; <u>see</u> <u>Dukes</u>, 133 S.

Ct. at 2553 (citing <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 159 (1982)).  Under a strict burden

of proof, plaintiffs must affirmatively demonstrate that the requirements of Rule 23 are clearly

satisfied.  <u>Dukes</u>, 131 S. Ct. at 2551; <u>Trevizo v. Adams</u>, 455 F.3d 1155, 1162 (10th Cir. 2006).

Under Rule 23(a) they must first show that:

>   (1) the class is so numerous that joinder of all members is impracticable;
>   (2) there are questions of law or fact common to the class;
>   (3) the claims or defenses of the representative parties are typical of the claims or
>   defenses of the class; and
>   (4) the representative parties will fairly and adequately protect the interests of the
>   class.

Fed. R. Civ. P. 23(a).

   After satisfying these requirements, plaintiffs must demonstrate that the proposed class

action fits within one of the categories described in Rule 23(b), Fed. R. Civ. P.  Here, plaintiffs

assert that the case satisfies Rule 23(b)(3), which requires that "questions of law or fact common to

class members predominate over any questions affecting only individual members and that a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Fed. R. Civ. P. 23(b)(3).  In determining predominance and superiority under Rule 23(b)(3), the

Court considers the following factors:

>   (A)      the class members' interests in individually controlling the prosecution or defense

of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already begun by
        or against class members;

(C)     the desirability or undesirability of concentrating the litigation of claims in the
        particular forum; and

(D)     the likely difficulties in managing the action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

### B.     Rule 23(a) Requirements

Plaintiffs seek conditional certification of the following settlement class:

[A]ll Persons (including, as to all such Persons, their beneficiaries) who purchased
or otherwise acquired the common stock of YRCW between April 24, 2008 and
November 2, 2009, inclusive.  Excluded from the Class are the Defendants; any
officers or directors of YRCW during the Class Period and any current officers or
directors of YRCW; any corporation, trust or other entity in which any Defendant
has a controlling interest; and the members of the immediate families of William D.
Zollars, Michael Smid, Timothy A. Wicks, and Stephen L. Bruffet and their
successors, heirs, assigns, and legal representatives.  Also excluded from the Class
are those Persons who timely and validly request exclusion from the Class pursuant
to the Notice of Pendency and Proposed Settlement of Class Action.

Motion For Preliminary Approval (Doc. #76) at 18-19; Stipulation Of Settlement (Doc. #77) at 3

¶ 1.17.

### 1.     Numerosity

Rule 23(a)(1) requires plaintiffs to show that "the class is so numerous that joinder of all

members is impracticable."  Fed. R. Civ. P. 23(a)(1); see Trevizo, 455 F.3d at 1162.  They must

therefore produce some evidence or otherwise establish by reasonable estimate the number of class

members that may be involved.  See Rex v. Owens ex rel. State of Okla., 585 F.2d 432, 436 (10th

Cir. 1978).  This is a fact-specific inquiry and the Court has no set formula for determining whether

plaintiff meets this requirement.  Trevizo, 455 F.3d at 1162; Rex, 585 F.2d at 436.

Plaintiffs state that the action involves upwards of 65,000,000 shares, which were handled

8

by thousands of potential class members.  Motion For Preliminary Approval (Doc. #76) at 15.

Based on this representation, plaintiffs have satisfied the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires plaintiffs to show that "questions of law or fact are common to the

class." Fed. R. Civ. P. 23(a)(2).  Merely raising common questions, however, does not automatically

satisfy the commonality requirement.  See Dukes, 131 S. Ct. at 2551.  Plaintiffs must demonstrate

that they have suffered the same injury, and their claims must rely on a common contention that is

capable of classwide resolution.  Id.  A question is "common" if its truth or falsity will resolve an

issue that is central to the validity of every claim in one stroke.  Id.  To satisfy Rule 23(a)(2), a single

common question will do.  Id.

Here, common questions are clear.  Plaintiffs allege that defendants' false and misleading

statements and omissions caused class members to purchase YRC common stock at inflated prices

throughout the class period and caused them to lose money when the stock price fell after the truth

was revealed.   The common questions include whether defendants' misrepresentations and

omissions were material and whether defendants intended to deceive, manipulate or defraud the

market in making the statements.  Class action proceedings will therefore generate common answers

questions that are central to every claim.

### 3. Typicality And Adequacy Of Representation

The typicality and adequacy of representation requirements of Rule 23(a) "tend to

merge . . . , although the latter requirement also raises concerns about the competency of class

counsel and conflicts of interest." Dukes, 131 S. Ct. at 2551 n.5 (citing Falcon, 457 U.S. at 157-58).

Rule 23(a)(3) requires plaintiffs to show that "the claims of the representative parties are typical of

the claims of the class." Fed. R. Civ. P. 23(a)(3). This element requires that representative plaintiffs possess the same interests and suffer the same injuries as the proposed class members. Falcon, 457 U.S. at 156. But the claims of the representative plaintiffs need not be identical to those of the other class members. DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1198 (10th Cir. 2010). As long as the claims of named plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality. Id.

Rule 23(a)(4) requires plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet this requirement, the representative plaintiffs must show that (1) their interests do not conflict with the interests of other class members and (2) they will prosecute the action vigorously through qualified counsel. See E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977); Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002). To defeat class certification a conflict must be "fundamental" and speak to specific issues in controversy; minor conflicts are not enough. Eatinger v. BP Am. Prod. Co., No. 07-1266-EMF, 2010 WL 3023957, at *4 (D. Kan. Aug. 2, 2010). A fundamental conflict exists where some class members claim to have been harmed by conduct that benefitted other class members. See id. In such situations, the named representative cannot adequately represent the interests of the class because its interests are actually or potentially antagonistic to or in conflict with the interests and objectives of other class members. See id.

Plaintiffs state that they satisfy the typicality requirement because lead plaintiffs' claims and absent class members' claims arise out of the same alleged course of conduct, are based on the same legal theories and require the same evidence to prove. They contend that they will adequately represent absent class members because they purchased YRC common stock relying on the

10

company's false and misleading disclosures and omissions, and "suffered the same financial harms as the other stockholders."  <u>Unopposed Motion For Preliminary Approval Of Class Action Settlement</u> (Doc. #76) at 21.

Although plaintiffs assert that the interests of named plaintiffs and absent class members are aligned, they ignore aspects of the settlement agreement that appear to be directly inconsistent with named plaintiffs' purported typicality and adequacy of representation.  The proposed plan of allocation calls into question named plaintiffs' typicality and adequacy of representation because the agreement appears to do nothing for two sets of class members: (1) those who purchased shares between April 24, 2008 and April 22, 2009, and sold those shares before April 23, 2009, <u>see</u> <u>Notice Of Pendency</u> (Doc. #77-2),[1] and (2) any other class member whose pro rata share (after taxes, costs and attorney fees) will be less than $10.00, <u>see</u> <u>id.</u> at 17.  Under the settlement agreement, it appears that class members in either of these groups get exactly nothing in return for giving up their claims against defendants.  Plaintiffs do not explain why it is appropriate for named plaintiffs to negotiate a settlement on behalf of absent class members that requires those class members to surrender their claims for nothing in return.  <u>See</u> <u>Mirfaishi v. Fleet Mortg. Corp.</u>, 356 F.3d 781, 785 (7th Cir. 2004) (reversing approval of settlement that without explanation gave certain class members nothing in return for surrendering claims); <u>see also</u> <u>Mirfaishi v. Fleet Mortg. Corp.</u>, 450 F.3d 745 (2006) (reversing approval of second settlement in same case for same reason).  Plaintiffs have not

---

[1]      This category of class members likely receives nothing from the settlement because they purchased YRC stock after defendants made the first alleged misrepresentations and sold the stock before the alleged partial disclosure on April 23-24, 2009.  <u>See</u> <u>Amended Class Action Complaint For Violations Of Federal Securities Laws</u> (Doc. #38) at 37-41.  But plaintiffs provide no basis for finding that named plaintiffs adequately represent the interests of these absent class members or even that these putative class members should be in the class.

addressed these issues, much less affirmatively demonstrated under a strict burden of proof that named plaintiffs satisfy the typicality and adequacy of representation requirements of Rule 23(a).

**C.    Rule 23(b) Requirements**

Plaintiffs ask the Court to certify a settlement class under Rule 23(b)(3).  Under that provision, plaintiffs must show that "questions of law or fact common to members of the class predominate over any questions affecting individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors:

(A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
(B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C)    the desirability or undesirability of concentrating the litigation of claims in the particular forum; and
(D)    the likely difficulties in managing the action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

**1.    Predominance**

Determining whether "questions of law or fact common to class members predominate" begins with the elements of the underlying cause of action, listed above.  Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179, 2184 (2011).  In securities fraud actions, whether common questions predominate over individual ones often turns on the element of reliance.  Id. This is because the traditional (and most direct) way of demonstrating reliance – by showing that a particular plaintiff was aware of a company's statements or omissions when trading the company stock – would likely require individualized determinations.  But in Basic v. Levinson, the Supreme

12

Court found that limiting proof of reliance to this traditional method "would place an unnecessarily unrealistic evidentiary burden on the Rule 10b-5 plaintiff who has traded on an impersonal market." 485 U.S. at 245; see also Halliburton, 131 S. Ct. at 2185.  Basic alleviated these concerns by allowing plaintiffs to invoke a rebuttable presumption of reliance based on the fraud-on-the-market theory discussed above. Halliburton, 131 S. Ct. at 2185. Because the market "transmits information to the investor in the processed form of a market price," courts can assume that an investor relies on public misstatements whenever he "buys or sells stock at the price set by the market." Basic, 485 U.S. at 244, 247; see also Halliburton, 131 S. Ct. at 2185; Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 159 (2008); Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

As discussed above, to invoke the rebuttable presumption under the fraud-on-the-market theory, plaintiffs must show that the alleged misrepresentations or omissions were material and publicly known, the stock traded on an efficient market and the relevant transactions took place between the time defendants made the misrepresentations and the time the truth came out. Amgen, 133 S. Ct. at 1193.  At the class certification stage, however, plaintiffs need only prove publicity, market efficiency and the timing of plaintiffs' transactions. Id. at 1197-99.  Plaintiffs bear the burden to affirmatively demonstrate that class certification is appropriate, yet they have not directly addressed these requirements with specific evidence.  On this record, plaintiffs have not met their burden. See Gariety v. Grant Thornton, LLP, 368 F.3d 356, 365 (4th Cir. 2004) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997); Falcon, 457 U.S. at 161).

### 2.   Superiority

Plaintiffs state that defendants' misstatements and omissions damaged thousands of

individuals, but that few were damaged to the degree that would justify suing on their own.  They state that class resolution is the most efficient way to adjudicate the injured investors' claims.  For these reasons, the Court agrees that a class action would be superior to individual actions. Nevertheless, for the reasons stated above, the Court denies plaintiffs request for class certification.

**II.      Preliminary Approval Of Proposed Settlement**

Under Rule 23(e), Fed. R. Civ. P., once a class is certified, the action may not be settled, dismissed or compromised without Court approval.  Preliminary approval of a proposed settlement is the first of two steps required before a class action may be settled.  <u>In re Motor Fuel Temperature Sales Practices Litig.</u>, 258 F.R.D. 671, 675 (D. Kan. 2009).  If the Court grants preliminary approval, it directs notice to class members and sets a hearing at to determine the fairness of the class settlement.  <u>Id.</u>

At the preliminary approval stage, the Court makes a preliminary evaluation of the fairness of the proposed settlement and determines whether the proposed settlement is within the range of possible approval, <u>i.e.</u> whether there is any reason not to notify class members of the proposed settlement and proceed with a fairness hearing.  <u>See</u> <u>Gautreaux v. Pierce</u>, 690 F.2d 616, 621 n.3 (7th Cir. 1982); <u>Freebird, Inc. v. Merit Energy Co.</u>, No. 10-1154-KHV, 2012 WL 6085135 (D. Kan. Dec. 6, 2012); <u>In re Motor Fuel Temperature Sales Practices Litig.</u>, 258 F.R.D. at 675-76; 4 Robert Newberg, Newberg on Class Actions § 11:25 at 38 (4th ed. 2002).  The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.  <u>In re Motor Fuel Temperature Sales Practices Litig.</u>, 258 F.R.D. at 675.  The standards

14

for preliminary approval of a class settlement are not as stringent as the requirements for final approval. Freebird, 2012 WL 6085135 at *5. The Court is mindful, however, that a higher degree of scrutiny applies when determining the fairness of a settlement negotiated before class certification. In re Motor Fuel Temperature Sales Practices Litig., 258 F.R.D. at 676.

In deciding whether to approve a proposed settlement, the Court assesses the reasonableness of the compromise, taking into account the context in which the parties reached the settlement. See id. (citing Nat'l Treasury Emp. Union v. United States, 54 Fed. Cl. 791, 797 (2002)). Although the Court must assess the strength of plaintiffs' claims, it should "not decide the merits of the case or resolve unsettled legal questions." Id. (citing Carson v. Am. Brands, Inc., 450 U.S. 79, 88 n.14 (1981)).

Plaintiffs ask the Court to preliminarily approve the proposed settlement. In determining whether a proposed settlement is fair, reasonable and adequate, the Court considers the following factors :

(1)    whether the proposed settlement was fairly and honestly negotiated;
(2)    whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
(3)    whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
(4)    the judgment of the parties that the settlement is fair and reasonable.

Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1188 (10th Cir. 2002). While the Court will consider these factors in greater depth at the final approval hearing, they are a useful guide at the preliminary approval stage as well. See In re Motor Fuel Temperature Sales Practices Litig., 258 F.R.D. at 675; Lucas v. Kmart Corp., 234 F.R.D. 688, 693 (D. Colo. 2006); Am. Med. Ass'n v. United Healthcare Corp., No. 00-2800(LMM), 2009 WL 1437819 at *3 (S.D.N.Y. May 19, 2009).

The first, second and fourth factors weigh in favor of preliminary approval. As to the first

15

factor, it appears the parties negotiated the settlement fairly and honestly.  The parties are represented by counsel with experience in securities class action litigation.  They engaged in extensive arms-length negotiations including mediation with Judge Infante, which produced this settlement agreement.  As to the second factor, serious questions of law and fact remain.  Although this case is more than two years old, it is still in infancy, as class actions go.  Discovery started just 10 months ago.  If the parties had not settled, fact discovery would continue through April 10, 2014 and expert discovery would continue through August 27, 2014.  The long road to trial would invariably include discovery disputes, dispositive motions and <u>Daubert</u> challenges to expert witnesses.  As to the fourth factor, the parties' lawyers have signed the settlement agreement, indicating that they think the agreement is fair and reasonable.  <u>See</u> <u>Stipulation Of Settlement</u> (Doc. #77) at 40-42.

Regarding the third factor, the Court weighs the value of immediate recovery under the settlement against the possibility of future recovery after protracted litigation.  As noted above, under the settlement agreement, defendants would pay $11,000,000 into a settlement fund.  The fund will first pay an uncertain amount (up to either $150,000 or $300,000) for class notice, then it will pay plaintiffs' counsel (up to more than $3.6 million) and costs (up to $60,000).  <u>Notice Of Pendency</u> (Doc. #77-2) at 5-6.  Named plaintiffs will receive $5,000 each.  <u>Id.</u>  After deducting these costs and fees, the remaining proceeds will be distributed to class members who timely submit a valid claim.  The estimated per-share value of the settlement is 11 cents per share.  But only those with claims of $10.00 or more will receive anything from the settlement.  <u>See</u> <u>Notice Of Pendency</u> (Doc. #77-2) at 17.  Class members who bought shares between April 24, 2008 and April 22, 2009, and sold those shares before April 23, 2009, also receive nothing.  <u>See</u> <u>id.</u> at 15.  If any balance

remains in the settlement fund six months after all valid claims have been paid, the balance will be redistributed on a pro rata basis to claimants whose shares in the remainder are greater than $10.00. If any balance remains in the settlement fund six months after the second distribution, the remainder will go to an "appropriate" non-profit organization selected by named plaintiffs and approved by the Court.  Plaintiffs do not suggest what (or even what kind of) non-profit organization they have in mind.

On this record, the Court is unpersuaded that the settlement agreement is fair and reasonable. Particularly because – without explanation –  the agreement leaves an unknown number of class members with nothing in return for giving up their claims against defendants.  In addition, the so-called cy pres provision, which gives the balance of the settlement fund after the second distribution to an unnamed non-profit organization, is clearly inadequate.  The Court recently addressed similar issues in In re Motor Fuel Temperature Sales Practices Litig., 286 F.R.D. 488, 504 (D. Kan. 2012).

Under the cy pres doctrine, some courts have allowed class action settlements to distribute unclaimed or non-distributable portions of a class action settlement fund to the "next best" class of beneficiaries.  In re Baby Prods. Antitrust Litig., 708 F.3d 163, 172 (3d Cir. 2013); Nachshin v. AOL, LLC, 663 F.3d 1034, 1036 (9th Cir. 2011).  To the extent cy pres distributions are allowed,[2] they must be carefully chosen to account for the nature of the lawsuit, the objectives of underlying

---

[2]      Some courts and legal commentators have doubted whether cy pres awards are appropriate in the class-action setting at all.  See, e.g., In re Thornburg Mortg., Inc. Sec. Litig., 885 F. Supp. 2d 1097, 1111 (D.N.M) (2012) (cy pres awards inject third party into litigation, do not adequately reflect best interests of absent class members, create appearance of impropriety and are not best use of court's time and resources).  The Tenth Circuit has not addressed the issue.  See id. at 1106.  Here, the Court does not address whether cy pres awards are ever appropriate.  It only notes that if it were to allow a cy pres distribution, the settlement must identify the proposed recipient and must withstand the rigorous scrutiny described in the cases cited herein.

statutes and the interests of absent class members, including their geographic diversity.  See In re Baby Prods. Antitrust Litig., 708 F.3d 163 (cy pres distributions allowed but inferior; must be specifically justified); Dennis v. Kellogg Co., 697 F.3d 858 (9th Cir. 2012) (concerns regarding cy pres beneficiaries not placated by settlement provision that charities will be identified later and approved by court); In re Lupron Mktg. & Sales Pract. Litig., 677 F.3d 21, 33 (1st Cir. 2012) (when feasible, interests of cy pres recipients should reasonably approximate those being pursued by class); Nachshin, 663 F.3d at 1039 (cy pres distribution must target plaintiff class; must be "driving nexus" between cy pres beneficiaries and class); In re Airline Ticket Comm'n Antitrust Litig., 307 F.3d 679, 682 (8th Cir. 2002) (emphasizing importance of tailoring cy pres distribution to nature of underlying suit).  Here, the proposed settlement provides no information regarding the proposed cy pres recipient.  It provides only that lead plaintiffs will choose the beneficiary subject to Court approval. When the selection of cy pres beneficiaries is not tethered to the nature of the lawsuit and the interests of absent class members, the selection process may answer to the whims and self-interests of the parties, counsel or the Court.  See Nachshin, 663 F.3d at 1039.  By not identifying the proposed cy pres recipient, the parties have restricted the Court's ability to conduct the searching inquiry required to approve such a distribution.  See Dennis, 697 F.3d at 867.  In addition, the failure to designate a proposed cy pres recipient deprives class members of notice and the ability to object.

On this record, plaintiffs have not shown that the proposed settlement provides sufficient value or benefit to class members to justify releasing their class action claims against defendants. Accordingly, for all the reasons stated above, the Court cannot preliminarily approve the settlement agreement as fair and reasonable to the entire class.

III.    **Notice And Hearing**

For settlements of class claims certified under Rule 23(b), Fed. R. Civ. P., the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(c)(2)(B).  The parties have submitted a proposed settlement notice.  See Notice Of Pendency (Doc. #77-2) filed May 31, 2013.  The Court has reviewed the proposed notice but because it has denied plaintiffs' request for preliminary class certification and settlement approval, it declines to address plaintiffs' proposed notices at this time.

IV.    **Conclusion**

On this record, for the reasons stated above, the Court denies plaintiffs' request for preliminary class certification and settlement approval.  As a result, it is unable to appoint lead counsel for the class or direct issuance of notice at this time.

**IT IS THEREFORE ORDERED** that plaintiffs' Unopposed Motion For Preliminary Approval Of Class Action Settlement (Motion For Preliminary Approval) (Doc. #76) filed May 31, 2013, be and hereby is **OVERRULED**.

Dated this 19th day of August, 2013 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge