**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

|  |  |
|---|---|
| **STAN BETTER** and ) <br> **YRC INVESTORS GROUP,** ) <br> **Individually and on behalf of all** ) <br> **others similarly situated,** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> **YRC WORLDWIDE INC., WILLIAM D.** ) <br> **ZOLLARS, MICHAEL SMID, TIMOTHY** ) <br> **A. WICKS and STEPHEN L. BRUFFET,** ) <br> ) <br> **Defendants.** ) <br> _____) | **CIVIL ACTION** <br><br> **No. 11-2072-KHV** |

**MEMORANDUM AND ORDER**

Stan Better and the YRC Investors Group bring this securities class action on behalf of all who purchased common stock of YRC Worldwide Inc. ("YRC") between April 24, 2008 and November 2, 2009. They bring suit against YRC and four former YRC executives – William D. Zollars, Michael Smid, Timothy A. Wicks and Stephen L. Bruffet. Plaintiffs allege that all defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5 (Count I). They also allege that the individual defendants violated Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) (Count II). Plaintiffs assert that by disseminating materially false and misleading statements and/or concealing material adverse facts, defendants participated in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of YRC common stock. On August 19, 2013, the Court overruled plaintiffs' motion for preliminary class certification and preliminary approval of a proposed settlement, finding that plaintiffs had not shown that the proposed class satisfied Rule 23, Fed. R. Civ. P., or that the proposed settlement was fair and reasonable. See Memorandum And

Order (Doc. #79). This matter comes before the Court on plaintiffs' Amended Unopposed Motion For Preliminary Approval Of Class Action Settlement ("Amended Motion For Preliminary Approval") (Doc. #81) filed August 28, 2013. For reasons stated below, the Court overrules the amended motion.

## Analysis

In its previous ruling, the Court declined to approve the proposed settlement because plaintiffs did not show that (1) they satisfied the typicality and adequacy of representation requirements of Rule 23(a)(3) and (4), Fed. R. Civ. P., see Memorandum And Order (Doc. #79) at 10-12; (2) common questions of law or fact predominate over individual ones under Rule 23(b)(3), Fed. R. Civ. P., see id. at 12-13; and (3) the proposed settlement provides sufficient value or benefit to class members to justify releasing their class action claims against defendants, see id. at 16-18.[1] Plaintiffs respond with an amended proposed settlement and additional information to address the Court's concerns.

**I.    Typicality and Adequacy of Representation Under Rule 23(a)(3) and (4)**

In its previous ruling, the Court found that plaintiffs did not show that they can satisfy the typicality and adequacy of representation requirements of Rule 23(a)(3) and (4), Fed. R. Civ. P. See

---

[1]    For a complete discussion of facts, procedural background and legal standards, see the Court's Memorandum And Order (Doc. #79) at 2-8.

In its previous order, the Court noted that the proposed settlement contained an unexplained discrepancy regarding the amount of money which the escrow agent may spend to effectuate notice. See id. at 3. Specifically, paragraph 2.9 of the proposed settlement agreement allowed the agent to spend up to $300,000 while paragraph 5.2 allowed the agent to spend up to $150,000. See id. Plaintiffs respond that the discrepancy was the result of a typographical error and that $300,000 is the correct amount. See Amended Motion For Preliminary Approval (Doc. #81) at 2-3, n.1. The amended settlement includes the corrected amount, i.e. the escrow agent may spend up to $300,000 on notice. See Corrected Stipulation Of Settlement (Doc. #80) filed August 28, 2013 ¶¶ 2.9, 5.2.

2

Memorandum And Order (Doc. #79) at 11-12.[2] Specifically, the Court found that the proposed plan of allocation provided nothing for the following two sets of class members: (1) those who purchased shares between April 24, 2008 and April 22, 2009 and sold the shares before April 23, 2009; and (2) class members whose amount of distribution (after taxes, costs and attorney fees) would be less than ten dollars. See id. at 11. Regarding the second category of class members, i.e. those whose pro rata share would be less than $10.00, plaintiffs respond that they have amended the settlement to provide payment to those class members. See Amended Motion For Preliminary Approval (Doc. #81) at 7. The amendment alleviates the Court's previous concerns in this regard.

As noted, regarding the first category of class members, i.e. those who purchased shares between April 24, 2008 and April 22, 2009 and sold those shares before April 23, 2009, the Court found that named plaintiffs did not explain why it is appropriate for them to negotiate a settlement which requires some absent class members to surrender their claims for nothing in return. See id. The proposed amended agreement remains the same, i.e. it requires those class members to surrender their claims for nothing in return. Plaintiffs assert that Dura Pharms., Inc. v. Broudo, 544 U.S. 336 (2005), mandates this result. See Amended Motion For Preliminary Approval (Doc. #81) at 5-7.

In Dura Pharms., the Supreme Court found that to state a claim for securities fraud, plaintiff must allege more than an artificially inflated purchase price due to misrepresentation; she must identify a causal connection between the loss and the misrepresentation. 544 U.S. at 347. Plaintiffs assert that under Dura Pharms., class members cannot show loss causation if they sold the stock before the truth became known to the market. See Amended Motion For Preliminary Approval

---

[2] The Court found that plaintiffs satisfied the numerosity and commonality requirements of Rule 23(a)(1) and (2), Fed. R. Civ. P. See Memorandum And Order (Doc. #79) at 8-9.

3

(Doc. #81) at 5-6. Plaintiffs assert that because the amended complaint alleges that the truth began to be revealed on April 23, 2009, any class member who sold shares before that date cannot show that the alleged misrepresentation caused her loss. Id. This assertion may or may not be true. See, e.g., McGuire v. Dendreon Corp., 267 F.R.D. 690, 699 (W.D. Wash. 2010) (under Dura Pharms. in-and-out traders could prove loss by showing they purchased stock solely due to misrepresentation). Regardless, it does not show that the named plaintiffs can adequately represent the interests of all class members in this case.

The amended settlement proposes to pay differing amounts to different groups of class members, depending when they purchased and sold their stock. Specifically, the amended settlement proposes to allocate the settlement proceeds as follows:

    Group A:    For shares purchased between April 24, 2008 and April 22, 2009, inclusive, and sold before April 23, 2009, recognized loss per share is $0.00.

    Group B:    For shares purchased between April 24, 2008 and April 23, 2009, inclusive, and held on January 30, 2010, recognized loss per share is the lesser of:
        A.    $1.94.
        B.    The price paid less $1.29.

    Group C:    For shares purchased between April 24, 2008 and April 23, 2009, inclusive, and sold between November 2, 2009 and January 30, 2010, inclusive, recognized loss per share is the lesser of:
        A.    $1.94.
        B.    The price paid less $1.29.
        C.    The price paid less the price received.

    Group D:    For shares purchased between April 24, 2008 and April 23, 2009, inclusive, and sold between April 24, 2009 and November 2, 2009, inclusive, recognized loss per share is the lesser of:
        A.    $.35.
        B.    The price paid less $3.46.
        C.    The price paid less the price received.

> Group E: For shares purchased between April 24, 2009 and November 2, 2009, inclusive, and held on January 29, 2010, recognized loss per share is the lesser of:
> A. $1.59.
> B. 70% of the price paid less $1.29.
> C. The price paid less the price received.
>
> Group F: For shares purchased between April 24, 2009 and November 2, 2009 and sold between November 2, 2009 and January 29, 2010, inclusive, recognized loss per share is the lesser of:
> A. $1.59.
> B. 70% of the price paid less $1.29.
> C. The price paid less the price received.

Amended Notice Of Pendency at 14-15, attached to Corrected Stipulation Of Settlement (Doc. #80) filed August 28, 2013.[3]

Although the named plaintiffs do not break down the categories in which their claims fall, they submit an exhibit which contains their stock purchase and sale information. See Exhibit HH to Corrected Stipulation Of Settlement (Doc. #80). Based on this exhibit, it appears that Better's claims fall in Group B and YRC Investors' claims fall in Groups B, E and F. See id. Thus, it appears that no named plaintiff holds claims which fall in Groups A, C or D. Also, it appears that the settlement does not address the claims of class members who purchased stock between April 24, 2009 and November 1, 2009, inclusive, and sold before November 2, 2009. The class definition includes stockholders whose claims fall in this category,[4] but the record does not explain why the

---

[3] For ease of discussion, the Court identifies the proposed subgroups of distribution as Groups A, B, C, D, E and F.

[4] The proposed amended settlement defines the settlement class as follows:

"Class" means all Persons (including, as to all such Persons, their beneficiaries) who purchased or otherwise acquired the common stock of YRCW between April 24, 2008 and November 2, 2009, inclusive. Excluded from the Class are the Defendants;

(continued...)

5

amended settlement does not provide relief for these class members.

In Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997), the Supreme Court found that where members of a settlement class have divergent interests and receive diverse benefits under a settlement, the structure of the settlement must assure fair and adequate representation for the diverse groups and individuals affected. Id. at 627. Because the proposed amended settlement provides differing relief to different groups within the settlement class, it appears that the interests of the named representatives are not aligned with every member of the settlement class. Better and YRC Investors hold claims which fall in Groups B, E and F, i.e. groups which receive higher payments under the settlement than other groups.[5] It appears that each named representative purports to serve generally as a representative for the entire settlement class, even though the interests of that representative are not the same as class members who hold claims which fall into other groups. Under these circumstances, plaintiffs have not shown that the named representatives

---

[4](...continued)
any officers or directors of YRCW during the Class Period and any current officers or directors of YRCW; any corporation, trust or other entity in which any Defendant has a controlling interest; and the members of the immediate families of William D. Zollars, Michael Smid, Timothy A. Wicks, and Stephen L. Bruffett and their successors, heirs, assigns, and legal representatives. Also excluded from the Class are those Persons who timely and validly request exclusion from the Class pursuant to the Amended Notice of Pendency and Proposed Settlement of Class Action[.]

Corrected Stipulation Of Settlement (Doc. #80) ¶ 1.17.

[5] As noted, it appears that the named plaintiffs do not hold claims which fall in Groups A, C and D. For Groups B and C, the amended settlement provides damages per share in the lesser amount of (1) $1.94 or (2) the price paid less $1.29. For Groups E and F, it provides damages per share in the lesser amount of (1) $1.59; (2) 70 per cent of the price paid less $1.29; or (3) the price paid less the price received. For Group A, the amended settlement provides nothing. For Group D, it provide damages per share in the lesser amount of (1) $.035; (2) the price paid less $3.46; or (3) the price paid less the price received.

are adequate representatives for the entire settlement class.  See In re Motor Fuel Temp. Sales Pract. Litig., 271 F.R.D. 263, 283 (D. Kan. 2010).

## II.     Whether Common Questions of Law or Fact Predominate Under Rule 23(b)(3)

In its previous ruling, the Court found that plaintiffs had not shown that common questions predominate under Rule 23(b)(3).  See Memorandum And Order (Doc. #79) at 12-13.  The Court found that in securities fraud cases at the class certification stage, plaintiffs can show common questions of reliance by invoking the fraud-on-the-market theory, i.e. by showing that (1) the alleged misrepresentations or omissions were publicly known; (2) the stock traded on an efficient market; and (3) the relevant transactions took place between the time defendants made the misrepresentations and the time the truth came out.  See id. (citing Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1197-99 (2013)).

In their amended motion for preliminary approval, plaintiffs present evidence which suggests that (1) the alleged misrepresentations or omissions were publically known, see Amended Motion For Preliminary Approval (Doc. #81) at 17-18; (2) during the class period, YRC stock traded on an efficient market, see id. at 18-22; and (3) the relevant transactions took place between the time defendants made the misrepresentations and the time the truth came out, see id. at 21-22.  On this record, plaintiffs have preliminarily shown that common questions predominate under Rule 23(b)(3).

## III.    Whether the Amended Settlement Provides Sufficient Value or Benefit to Class Members

In its previous ruling, the Court found that plaintiffs had not shown that the proposed settlement provided sufficient value or benefit to class members to justify releasing their class action claims against defendants.  See Memorandum And Order (Doc. #79) at 16-18.  Specifically, the Court found that (1) plaintiffs did not explain why the settlement left an unknown number of class

7

members with nothing in return for giving up their claims against defendants; and (2) by not identifying a proposed cy pres recipient, the parties had restricted the Court's ability to conduct the searching inquiry required to approve such a distribution.  See id.

### A. Providing Nothing to Class Members Who Purchased Between April 24, 2008 and April 22, 2009, Inclusive, and Sold Before April 23, 2009

As noted, the proposed amended settlement includes class members whose claims fall in Group A, i.e. those who purchased YRC stock between April 24, 2008 and April 22, 2009, inclusive, and sold the stock before April 23, 2009.  In exchange for releasing claims against defendants, the amended settlement proposes to pay these class members nothing.  Previously, the Court found that plaintiffs did not show that the proposed settlement provided sufficient value or benefit to these class members to justify releasing their claims against defendants.  See Memorandum And Order (Doc. #79) at 16-18.

Plaintiffs respond that the Supreme Court ruling in Dura Pharms. "requires this outcome." Amended Motion For Preliminary Approval (Doc. #81) at 5.  As noted, in Dura Pharms., the Supreme Court found that to establish securities fraud liability, a plaintiff cannot rely solely on an inflated purchase price; rather, she must show a causal connection between defendants' misrepresentation and her loss.  544 U.S. at 347.  Plaintiffs assert that under Dura Pharms., class members whose claims fall in Group A cannot show a causal loss connection because the first partially true disclosure did not occur until April 23, 2009.  See Amended Motion For Preliminary Approval (Doc. #81) at 5-6.  Plaintiffs assert that class members who sold before April 23, 2009 did not suffer any damage as a result of the fraud because the sales price was still artificially inflated at the time of sale.  See id. at 6.  As a practical matter, the Court cannot determine if plaintiffs' assertion is correct.  It may be possible for Group A class members to prove loss by showing that

absent the misrepresentation, they would not have purchased the stock in the first place. See, e.g., McGuire, 267 F.R.D. at 699. Or Group A class members may disagree with the named plaintiffs' contention that the truth did not begin to leak out until April 23, 2009. As noted, named plaintiffs do not hold claims which fall in Group A. Under these circumstances, it appears that the named plaintiffs should either (1) find a named plaintiff who can adequately represent the interests of Group A class members in settlement negotiations; or (2) omit Group A class members from the class definition and proposed settlement.

Plaintiffs assert that Group A class members "are properly included in the Class definition." Amended Motion For Preliminary Approval (Doc. #81) at 5. The cases which they cite, however, involve initial class certification, not preliminary certification of a settlement class. See McGuire, 267 F.R.D. at 698-99; Ross v. Abercrombie & Fitch Co., 257 F.R.D. 435 (S.D. Ohio 2009); In re DVI Inc. Sec. Litig., 249 F.R.D. 196 (E.D. Pa. 2008). In those cases, the courts included in the class definitions early sellers, i.e. so-called "in-and-out investors," noting a possibility that plaintiffs could show that those traders incurred damages as a result of defendants' conduct. See McGuire, 267 F.R.D. at 699 (certifying class which includes in-and-out traders, allowing plaintiffs to conduct discovery to see if they can prove damages); Ross, 257 F.R.D. at 456 (individual damage issues not appropriate consideration at class certification stage; plaintiff showed in-and-out investors may have suffered damages due to partial disclosures during class period); In re DVI, 249 F.R.D. at 219 (existence of loss causation is fact question; certifying class that includes early sellers noting that "participants" in class will be limited to only those who can show damages). The cases do not support plaintiffs' assertion that they must include in-and-out traders in a settlement which releases their claims in exchange for nothing in return.

9

On this record, plaintiffs have not shown that it is fair, reasonable and adequate to include in the amended settlement class members whose claims fall in Group A, particularly when no named representative holds a claim which falls in this category.[6] The Court also notes that without explanation, the proposed plan of allocation appears to give significantly less money to class members whose claims fall in Group D, and that no named plaintiff holds a claim which falls in Group D. In addition, it appears that the proposed amended settlement does not address the claims of class members who purchased stock between April 24, 2009 and November 1, 2009, inclusive, and sold before November 2, 2009. Plaintiffs have not shown that the proposed amended settlement provides sufficient benefit or value to these class members to justify releasing their class action claims against defendants.

### B.  Cy Pres Recipient

Previously, the Court found that because the parties had not identified a proposed cy pres recipient, it could not conduct the searching inquiry required to approve such a distribution. See Memorandum And Order (Doc. #79) at 18. The proposed amended settlement names the FINRA Investor Education Foundation ("FINRA Foundation") as cy pres recipient for any money which remains after two distributions to class members who submit claims.[7] Plaintiffs assert that the

---

[6] Plaintiffs assert that Group A class members may opt out of the settlement if they wish. See Amended Motion For Preliminary Approval (Doc. #81) at 6-7. It appears that no logical reason exists for any Group A purchaser to stay in the settlement. Under these circumstances, it makes no sense to include Group A purchasers in the proposed settlement. See, e.g., In re Motor Fuel Temp. Sales Pract. Litig., No. 07-1840-KVH, 2013 WL 4411092, at *4 (D. Kan. Aug. 14, 2013) (foregoing class notice where no rational class member would choose to stay in class).

[7] FINRA is the Financial Industry Regulatory Authority, an independent, not-for-profit organization authorized by Congress to protect investors by ensuring that the securities industry operates fairly and honestly. See FINRA website, About FINRA,
(continued...)

FINRA Foundation is a national organization which provides funds to select non-profit organizations to enable them to provide financial and investor education programs and materials which focus on fraud prevention. See Amended Motion For Preliminary Approval (Doc. #81) at 11.

As noted in the Court's previous order, to the extent that cy pres distributions are allowed, they must be carefully chosen to account for the nature of the lawsuit, the objectives of underlying statutes and the interests of absent class members, including their geographic diversity. See Memorandum And Order (Doc. #79) at 17-18 (citations omitted). The American Law Institute Principles of the Law of Aggregate Litigation ("ALI Principles") provide additional guidance in this regard.[8] See Am. Law Inst., Principles of the Law of Aggregate Litigation § 3.07 (2010). Those principles instruct that in determining whether a cy pres award is appropriate, courts should apply the following criteria:

> (a) If individual class members can be identified through reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should be distributed directly to individual class members.
> (b) If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.
> (c) If the court finds that individual distributions are not viable based upon

---

[7](...continued)
http://www.finra.org/AboutFINRA/index.htm (last visited on November 13, 2013).

[8] Many courts have looked to the ALI Principles for guidance on distributing cy pres funds. See, e.g., In re Lupron Mktg. & Sales Pract. Litig., 677 F.3d 21, 32-33 (1st Cir. 2012); Klier v. Elf Atochem N. Am., Inc., 658 F.3d 468, 475 (5th Cir. 2011); Perkins v. Am. Nat'l Ins. Co., No. 3:05-CV-100 (CDL), 2012 WL 2839788, at *2 (M.D. Ga. July 10, 2012).

11

> the criteria set forth in subsections (a) and (b), the settlement may utilize a cy pres approach. The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class. If, and only if, no recipient whose interests reasonably approximate those being pursued by the class can be identified after thorough investigation and analysis, a court may approve a recipient that does not reasonably approximate the interests being pursued by the class.

Id.

Here, the amended settlement proposes to twice distribute settlement funds to class members who timely submit claims and then distribute any remaining funds to the cy pres recipient. See Corrected Stipulation Of Settlement (Doc. #80) ¶ 5.7; Amended Notice Of Pendency at 16, ¶ 13. Without more information, the Court cannot determine whether the amount of remaining funds would be too small to make further individual distributions economically viable. See Am. Law Inst., Principles of the Law of Aggregate Litigation § 3.07(b). The parties point to no specific reasons that would make further distributions to class members impossible or unfair. See id. Also, the record contains no information as to whether the parties have any pre-existing relationship or connection with FINRA or the FINRA Foundation. Before approving the proposed cy pres clause, the Court would require such information to determine whether the parties have designated the beneficiary at arms length.

On this record, plaintiffs have not shown that the proposed amended settlement provides sufficient value or benefit to class members to justify releasing their class action claims against defendants. Accordingly, for all the reasons stated above, the Court cannot preliminarily approve the amended settlement.

**IV.    Notice And Hearing**

Because the Court denies plaintiffs' request for preliminary class certification and settlement

approval, it declines to address plaintiffs' proposed notices at this time.

**V.    Conclusion**

On this record, for the reasons stated above, the Court denies plaintiffs' request for preliminary class certification and preliminary approval of the proposed amended settlement.

**IT IS THEREFORE ORDERED** that plaintiffs' <u>Amended Unopposed Motion For Preliminary Approval Of Class Action Settlement</u> (Doc. #81) filed August 28, 2013 be and hereby is **OVERRULED**.

Dated this 18th day of November, 2013 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge