## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STAN BETTER, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>YRC WORLDWIDE INC., et al., )<br>)<br>Defendants. )<br>_____ ) | CIVIL ACTION<br><br>No. 11-2072-KHV |

### MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE

On behalf of themselves and all who purchased common stock of YRC Worldwide Inc.

("YRC") between April 24, 2008 and November 2, 2009, Stan Better and YRC Investors Group[1]

bring suit against YRC, William D. Zollars, Michael Smid, Timothy A. Wicks, F. Joseph Whitsel III

and Stephen L. Bruffett under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934

("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. See

Amended Class Action Complaint For Violations Of Federal Securities Laws ("Amended

Complaint") (Doc. #38) filed October 21, 2011, ¶¶ 173-182, 184-86. This matter comes before the

Court on Lead Plaintiffs' Motion For Class Certification ("Motion For Class Certification")

(Doc. #111) filed May 29, 2015. For reasons stated below, the Court overrules the motion.

### Factual Background

On February 7, 2011, Bryant Holdings, LLC filed the initial complaint in this case. See

---

[1]      YRC Investors Group is comprised of Frank Yonan, George Alexiou ("Alexiou"), Suzanne Alexiou ("Suzanne Alexiou"), Robert Dodd and Bryant Holdings, LLC. See Amended Complaint (Doc. #38) ¶ 10. Bryant Holdings, LLC is a limited liability company organized in the State of New York. See Videotaped Deposition Of William Bryant at 37:21-25, Exhibit 6 to Defendants' Motion To Supplement Record (Doc. #189). William Bryant owns 99 per cent of Bryant Holdings, LLC. Id. at 38:1-4. Bryant's wife owns the remaining one per cent of Bryant Holdings, LLC. Id. at 38:5-7.

<u>Class Action Complaint For Violations Of Federal Securities Laws</u> (Doc. #1).  The same day, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(A)-(B), plaintiff published notice advising putative class members of the pendency of the action and their right to move the Court to serve as lead plaintiff of the purported class.[2]  <u>See</u>

---

[2]   The PSLRA was "intended to empower investors so that they, not their lawyers, control securities litigation . . . [and to change the existing system, in which] investors in the class usually have great difficulty exercising any meaningful discretion over the case brought on their behalf."  <u>Shiring v. Tier Tech., Inc.</u>, 244 F.R.D. 307, 315 (E.D. Va. 2007) (quoting S. Rep. 104-98, at 6 (1995), 1995 U.S.C.C.A.N. 679, 684) (further case citations omitted).

Regarding appointment of lead plaintiff(s) in private class actions involving securities litigation, Section 78u-4(a)(3) states in part as follows:

(A) Early notice to class members
 (i) In general
Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class–
  (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
  (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class. * * *
(B) Appointment of lead plaintiff
 (i) In general
Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph. ***
 (iii) Rebuttable presumption
  (I) In general
  Subject to subclause (II), for purposes of clause (i), the court shall adopt a presumption that the most adequate plaintiff in any private

(continued...)

2

Stipulation & [Proposed] Order (Doc. #8) filed March 11, 2011 at 2; Exhibit A to Declaration Of

Frank J . Johnson In Support Of Stan Better's Motion For Appointment As Lead Plaintiff And

Approval Of Lead Plaintiff's Selection Of Counsel (Doc. #17-2) filed April 8, 2011.

     Following publication of the notice, Better and YRC Investors Group filed separate motions

seeking appointment as lead plaintiff in the case.[3]  See Motion [Of Better] To Appoint Lead Plaintiff

And Lead Counsel (Doc. #17) and Motion Of YRC Investors Group For Appointment As Lead

---

[2](...continued)

          action arising under this chapter is the person or group of persons that--

               (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
               (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
               (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

          (II) Rebuttal evidence
          The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff--

               (aa) will not fairly and adequately protect the interests of the class; or
               (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. * * *

          (v) Selection of lead counsel
          The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.
          (vi) Restrictions on professional plaintiffs
          Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period.

15 U.S.C. § 78u-4(a)(3).

[3]      No other member of the purported class sought to serve as lead plaintiff.

Plaintiff And Approval Of YRC Investors Group's Selection Of Lead Counsel (Doc. #18), both filed April 8, 2011.  No other parties sought appointment as lead plaintiff.

On May 6, 2011, Better and YRC Investors Group filed a stipulation which asked the Court to appoint them as co-lead plaintiffs under the PSLRA, 15 U.S.C. §§ 78u-4(a)(3)(B) and 77z-1(a)(3)(B).  See Stipulation Requesting Appointment Of Lead Plaintiff Movants Stan Better And YRC Investors Group As Co-Lead Plaintiffs And Approval Of Selection Of Co-Lead Counsel ("Stipulation") (Doc. #25).  Specifically, the parties stipulated that collectively, Better and YRC Investors Group satisfied the typicality and adequacy requirements and had the largest financial interest in relief sought by the class.[4]  Id. ¶ 4.  Better and YRC Investors Group agreed that in light of their "mutual significant financial interest in the outcome of this litigation, the economies of time, the benefits of pooling the collective experience and resources of their respective chosen counsel, and the importance of the focusing the litigation on advancing the case,"  they were "determined to work together and cooperate in the best interest of the class."  Id. ¶ 5.  Better and YRC Investors Group agreed that as co-lead plaintiffs, they would "coordinate regularly throughout the action to prosecute this action effectively and efficiently on behalf of the Class."  Id. ¶ 7.

On August 22, 2011, based on the parties' stipulation, the Court appointed Better and YRC Investors Group as co-lead plaintiffs in the case.  See Order (Doc. #35).  The Court also approved their selection of Johnson & Weaver, LLP (counsel for Better) and Kahn, Swick & Foti LLP (counsel for YRC Investors Group) to serve as co-lead counsel.  See Order (Doc. #35); Stipulation (Doc. #25) ¶ 8.

---

[4]      Together, Better and YRC Investors Group assert that they suffered a total loss of $298,553.38.  Stipulation (Doc. #25) ¶ 5.

On October 21, 2011, co-lead plaintiffs filed an amended complaint. See Amended Complaint (Doc. #38). Plaintiffs alleged that throughout the class period, i.e. between April 24, 2008 and November 2, 2009, defendants made materially false and misleading statements and omissions regarding (1) the purported success of the technical integration of Yellow Corp. and Roadway Corp.; (2) the financial condition of YRC; and (3) the adequacy of YRC's internal controls. Id. ¶ 3. Plaintiffs asserted that as a result, YRC shares traded at artificially inflated levels and caused plaintiffs and class members to suffer economic loss when the truth was revealed. Id. ¶¶ 150-51.

Four times in this litigation, plaintiffs have unsuccessfully sought preliminary approval of a proposed class settlement. Each time, the Court overruled the motion based in part on plaintiffs' failure to show adequate representation under Rule 23(a)(4).

The Court overruled the first motion, in part, because plaintiffs had not shown that they could satisfy the typicality and adequacy of representation requirements under Rule 23(a)(3) and (4), Fed. R. Civ. P. See Memorandum And Order (Doc. #79) filed August 19, 2013 at 11-12. Specifically, the Court found that the proposed plan of allocation provided nothing for two sets of class members, i.e. those who purchased shares between April 24, 2008 and April 22, 2009 and sold the shares before April 23, 2009 and those whose amount of distribution would be less than ten dollars. See id. at 11. Plaintiffs did not explain why it was appropriate for named plaintiffs to negotiate a settlement on behalf of absent class members that required those class members to surrender their claims for nothing in return. See id.

The Court overruled the second motion, in part, because plaintiffs had not shown that the named representatives could adequately represent the class. See Memorandum And Order

5

(Doc. #82) filed November 18, 2013 at 3-7.  Specifically, the Court found that plaintiffs had not

shown that the named representatives could adequate represent the entire class where the proposed

settlement allocation paid differing amounts to different groups of class members depending on

when they bought and sold stock, the named representatives did not hold claims in all groups and

the settlement proposed no relief to one such group and lower payments to another.  See id. at 5-7.

The Court found that plaintiffs had not shown that the proposed settlement provided sufficient value

to certain class members who would receive nothing in exchange for releasing their claims.  See id.

at 8-10.

      In the third motion for preliminary settlement approval, plaintiffs asserted that they had

amended the proposed settlement to include additional class representatives (John Henard and

David Smolinski) whose claims fell in previously unrepresented distribution groups.[5]  See

Memorandum And Order And Order To Show Cause (Doc. #93) filed February 11, 2015 at 4.

Plaintiffs, however, did not show that the parties had executed a second amended settlement

agreement.  See id. at 5.  The Court overruled the motion, finding that even if plaintiffs had executed

a new or amended agreement, they did not provide sufficient details of a proposed notice plan.  See

id. at 5-10.  The Court noted that the case had been pending for more than four years with little to

no discovery and had been delayed due to the parties' amateurish efforts to settle putative class

action claims.  See id. at 10.  The Court stated that although they otherwise appeared to be generally

---

     [5]    In support of the third motion for preliminary settlement approval, plaintiffs submitted declarations by Better, Yonan, Bryant, Dodd, Alexiou, Henard and Smolinski.  See Exhibits (Docs. #86-3, 86-4, 86-5, 86-6, 86-7, 86-8, 86-9) filed February 18, 2014.  In the declarations, plaintiffs stated that they had reviewed the proposed settlement and plan of allocation, that they understood the methodology used for computing the recognized loss per share and pro rata distribution to groups in the class, and that they believed that the settlement and planned allocation were fair and reasonable for themselves and class members.  See id.

competent, plaintiffs' counsel for unexplained reasons had been unable to obtain conditional certification and preliminary approval of their proposed class settlements. See id. at 11. The Court stated that under the circumstances, it was "forced to question whether counsel are adequately and capably representing the proposed class at this time, and are willing and able to do so in the future." Id.[6]

Most recently, on October 15, 2015, the Court overruled plaintiffs' fourth motion for preliminary settlement approval. The Court cited various reasons, including failure to show adequate representation under Rule 23(a)(4). See Memorandum And Order (Doc. #183) filed October 15, 2015 at 2-3. More specifically, the Court found that plaintiffs had not shown that each proposed representative understood and accepted the fiduciary obligations owed to the subclass which he or she purported to represent.[7] See id. The Court found that to the extent plaintiffs proposed to structure the settlement to include subclasses represented by different class representatives, it would require an affidavit from each representative which stated that he or she

---

[6]    On March 20, 2015, plaintiffs filed a petition for writ of mandamus in the Tenth Circuit Court of Appeals. See Doc. #01019402435 in Appellate Case No. 15-3060. Plaintiffs asserted that with respect to overruling the motion for preliminary settlement approval, the district court committed manifest error by (1) addressing the issue of notice before certifying a conditional class; (2) denying conditional certification based on concerns regarding notice documents and the mechanics of notice; and (3) setting individual claims for trial and refusing to allow the parties time to seek to cure the proposed settlement. See id. at 1-3, 11-29. On April 28, 2015, the Tenth Circuit denied the petition, finding that mandamus was not justified. See Doc. #01019422742 in Appellate Case No. 15-3060.

[7]    In support of the fourth motion, plaintiffs submitted copies of the declarations which Bryant, Henard and Smolinski signed in support of the third motion. Compare Exhibits E, F and G (Docs. #118-5, 118-6, 118-7) filed June 11, 2015 with Docs. #86-5, 86-8, 86-9 filed February 18, 2014.

understood and accepted the fiduciary obligations owed to the subclass which he or she represented.[8] Id. The Court stated that in light of counsel's track record in the case, i.e. their repeated failure to present a settlement and class notice in a form which the Court could approve, it had "grave concerns whether counsel can provide capable and adequate representation of the class." Id. at 3. The Court noted that to date, it had "expended an extraordinary amount of judicial resources to identify numerous deficiencies in the parties' proposed settlement agreements and to try to point the parties in the right direction to obtain preliminary approval." Id. at 6.[9]

## **Legal Standards**

The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S. Ct. 2541, 2550 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979)). The Court has considerable discretion in making class certification decisions. See Tabor v. Hilti, Inc., 703 F.3d

---

[8]    The Court also found that the proposed notice plan was deficient in numerous respects. See Memorandum And Order (Doc. #183) at 3-5. For instance, plaintiffs did not present sufficient evidence regarding estimated reach of the proposed notice plan and the content of the proposed notices did not comply with the requirements of Rule 23(c)(2)(B), i.e. that the notice be written in clear and concise language which is plain and easy to understand. See id. at 4-5.

[9]    Defendants assert that if the Court overruled plaintiffs' fourth motion to preliminarily certify a settlement class, it must overrule plaintiffs' current motion to certify a class. See Defendants' Opposition To Lead Plaintiffs' Motion For Class Certification ("Defendants' Opposition") (Doc. #133) filed July 31, 2015 at 5. Specifically, defendants assert that if the record was insufficient to certify a settlement class, it is necessarily insufficient to certify a litigation class. See id. The Court disagrees. The proposed settlement class included all stock purchasers, regardless whether they incurred damages as a result of the alleged misrepresentations. See Memorandum And Order (Doc. #183) at 1-2 (discussing claims of so-called "in-and-out" purchasers, i.e. Groups A and G under proposed plan of allocation). The Court found that because the proposed settlement class included purchasers who did not incur damage as a result of defendants' alleged misconduct, it did not satisfy the requirements of commonality and adequacy of representation under Rule 23(a)(3) and (4) or predominance under Rule 23(b)(3). Id. at 2-3. Here, the proposed class includes only purchasers who incurred damage as a result of their stock purchase. Thus, the same concerns do not apply. In other words, while plaintiffs' current motion has problems, that is not one of them.

1206, 1227-28 (10th Cir. 2013) (because class certification involves "intensely practical considerations," decision lies within discretion of trial court); see also Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 712 (9th Cir. 2010) (district courts in best position to consider most fair and efficient procedure for litigation); Johns v. Bayer Corp., 280 F.R.D. 551, 555-56 (S.D. Cal. 2012) (quoting Ballard v. Equifax Check Serv., Inc., 186 F.R.D. 589, 600 (E.D. Cal. 1999)) (class actions that promote compliance with consumer protection laws "desirable and should be encouraged").  It must, however, conduct a "rigorous analysis" to determine whether the putative class satisfies the requirements of Rule 23.  Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013); Dukes, 131 S. Ct. at 2551; Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982).  Rule 23 "does not set forth a mere pleading standard."  Comcast, 133 S. Ct. at 1432 (quoting Dukes, 131 S. Ct. at 2551-52).  Rather, the Court's analysis will frequently overlap with the merits of plaintiffs' claims.  See Comcast, 133 S. Ct. at 1432; Dukes, 131 S. Ct. at 2551.  This is so because determining whether to certify a class "generally involves considerations that are enmeshed in the factual and legal issues comprising [plaintiffs'] cause of action."  Comcast, 133 S. Ct. at 1432 (quoting Dukes, 131 S. Ct. at 2551).

As the parties seeking to certify a class, plaintiffs have the burden to prove that the requirements of Rule 23 are satisfied.  See Shook v. El Paso Cnty., 386 F.3d 963, 968 (10th Cir. 2004); D. Kan. Rule 23.1(d).[10]  In doing so, plaintiffs must first satisfy the prerequisites of

---

[10]     D. Kan. Rule 23.1(d) states as follows:

(d) Burden of Proof; Notice.  Any party seeking to maintain a case as a class action bears the burden of presenting an evidentiary basis to the court showing that the action is properly maintainable as such. * * *

(continued...)

9

Rule 23(a), <u>i.e.</u> they must demonstrate that (1) the class is so numerous that joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) the claims of the representative parties are typical of claims of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. <u>See</u> Rule 23(a), Fed. R. Civ. P.[11]  After meeting these requirements, plaintiffs must demonstrate that the proposed class action fits within one of the categories described in Rule 23(b), Fed. R. Civ. P.  Here, plaintiffs seek to certify a class under Rule 23(b)(3).

Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting individual members" and that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors:

> (A)   the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;

---

[10](...continued)
D. Kan. Rule 23.1(d).

[11]     Rule 23(a) states as follows:

(a) PREREQUISITES. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

(C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

Id.

## Analysis

Plaintiffs seek to certify the following class:

All those who purchased or otherwise acquired the common stock of YRC between April 24, 2008, and November 2, 2009, inclusive, and were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

Motion For Class Certification (Doc. #111) at 7.  Plaintiffs ask the Court to appoint the following class representatives: Better, Yonan, Alexiou, Dodd, Bryant Holdings, LLC, Henard and Smolinski.

See id. at 1.[12]  Plaintiffs also ask the Court to appoint the law firms of Johnson & Weaver, LLP and

---

[12]     As noted, the Court previously appointed Better and YRC Investors Group to serve as co-lead plaintiffs under the PSLRA.  Yonan, Alexiou, Dodd and Bryant Holdings, LLC are members of YRC Investors Group.  Suzanne Alexiou is also a member of YRC Investors Group. Plaintiffs initially asked the Court to appoint Suzanne Alexiou as class representative but later withdrew the request.  See Motion For Class Certification (Doc. #111) at 1; Unopposed Motion For Leave To Withdraw Suzanne Alexiou From Six-Member Lead Plaintiff Group And As Proposed Class Representative (Doc. #181) filed October 8, 2015.  On February 12, 2016, the Court sustained plaintiffs' motion to withdraw Suzanne Alexiou as lead plaintiff and proposed class representative in the case.  See Order (Doc. #201).  The record is unclear whether Suzanne Alexiou remains a member of YRC Investors Group.

The fact that the Court has appointed Better and YRC Investors Group as co-lead plaintiffs does not influence the Court's determination here, i.e. whether named plaintiffs can satisfy the adequate representation requirement under Rule 23(a)(4).  To be appointed as lead plaintiff under the PSLRA, an applicant need only make a preliminary showing that he or she satisfies the typicality and adequacy requirements of Rule 23.  See, e.g., Villella v. Chem. & Mining Co. of Chile Inc., No. 15 Civ. 2106 ER, 2015 WL 6029950, at *6 (S.D.N.Y. Oct. 14, 2015); Ford v. Voxx Int'l Corp., No. 14-CV-4183 JS AYS, 2015 WL 4393798, at *3 (E.D.N.Y. July 16, 2015); Small v. Vanda Pharm. Inc., 10 F. Supp.3d 6, 13 (D.D.C. 2013); Bricklayers of W. Pa. Pension Plan v. Hecla Min. Co., No. 2:10-cv-0042-BLW,  2012 WL 2872787, at *6 (D. Idaho July 12, 2012).  In this case, for

(continued...)

Kahn, Swick & Foti LLP as counsel for the proposed class.

To obtain class certification, plaintiffs must show that the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied. Defendants assert that plaintiffs cannot meet the requirements of Rule 23(a)(4) or 23(b)(3). See Defendants' Opposition (Doc. #133) at 6-27; Defendants' Supplemental Memorandum (Doc. #190) at 4-5.[13] Defendants do not deny that plaintiffs can satisfy

---

[12](...continued)
purposes of obtaining appointment as co-lead plaintiffs under the PSLRA, Better and YRC Investors Group stipulated that they satisfied typicality and adequacy requirements. See Stipulation (Doc. #25) ¶ 4. The Court made no independent findings in this regard. See Order (Doc. #35). In deciding whether to certify a class under Rule 23, the Court engages in a more stringent inquiry to determine whether plaintiffs have shown that the proposed class representatives will fairly and adequately protect the interests of the class. See, e.g., Zhu v. UCBH Holdings, Inc., 682 F. Supp.2d 1049, 1053 (N.D. Cal. 2010) (inquiry at PSLRA lead-plaintiff-appointment stage not as searching as class-certification stage); Martingano v. Am. Int'l Group, Inc., No. 06CV16259(JG)(JMA), 2006 WL 1912724, at *4 (E.D.N.Y. July 11, 2006) (adequacy inquiry less stringent for lead plaintiff appointment under PSLRA than class certification under Rule 23(a)(4)).

[13]     In their opposition to plaintiffs' motion for class certification, defendants only challenged whether plaintiffs can satisfy the requirements of Rule 23(b)(3). See Defendants' Opposition (Doc. #133) filed July 31, 2015. At the time defendants filed that opposition, plaintiffs fourth motion for preliminary approval of settlement was pending. See Plaintiffs' Unopposed Fourth Motion For Preliminary Approval Of Class Action Settlement ("Fourth Motion For Preliminary Approval") (Doc. #116) filed June 11, 2015. In opposing the motion for class certification, defendants assert that while plaintiffs can satisfy the requirements of a settlement class, they cannot certify a litigation class because they cannot show that alleged damages are capable of measurement on a class-wide basis. See Defendants' Opposition (Doc. #133) at 1-3.
On October 15, 2015, the Court overruled the fourth motion for preliminary approval of the proposed settlement. See Memorandum And Order (Doc. #183). A month later, on November 20, 2015, defendants sought to supplement the record on plaintiffs' motion for class certification. See Defendants' Motion For Leave To Supplement The Record On Plaintiffs' Motion For Class Certification ("Defendants' Motion For Leave To Supplement") (Doc. #189). Defendants asserted that although they did not initially challenge adequacy of representation, they had since taken deposition testimony of lead plaintiffs which "raises serious questions" regarding whether the proposed class representatives are adequate under Rule 23(a)(4). Memorandum In Support Of Defendants' Motion For Leave To Supplement The Record On Plaintiffs' Motion For Class Certification ("Defendants' Supplemental Memorandum") (Doc. #190) filed November 20, 2015 at 1-4.

(continued...)

the numerosity, commonality and typicality requirements of Rule 23(a)(1), (2) and (3).  On this

record, the Court finds that plaintiffs have shown that the class is so numerous that joinder of all

members is impracticable,[14] that questions of law or fact are common to the class,[15] and that claims

of the representative parties are typical of claims of the class.[16]  See Fed. R. Civ. P. 23(a)(1), (2), (3).

---

[13](...continued)

On February 12, 2016, the Court sustained defendants' motion to supplement the record.  See Memorandum And Order (Doc. #202).  In particular, the Court found that it would consider Defendants' Supplemental Memorandum (Doc. #190) and Exhibits 1-7 to Defendants' Motion For Leave To Supplement (Doc. #189) as supplemental briefing and exhibits in opposition to Lead Plaintiffs' Motion For Class Certification (Doc. #111).  The Court granted plaintiffs leave to file a reply to the supplemental information, which they did on February 22, 2016.  See Plaintiffs' Reply To Defendants' Supplemental Briefing In Opposition To Plaintiffs' Motion For Class Certification ("Plaintiffs' Supplemental Reply") (Doc. #203).

[14]  The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations.  Gen. Tel. Co. of Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980).  To satisfy the requirement, plaintiffs must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved.  See Rex v. Owens ex rel. State of Okla., 585 F.2d 432, 436 (10th Cir. 1978).  The Court has no set formula for determining whether plaintiffs meet this requirement.  Id.  Here, plaintiffs assert that during the class period YRC had between 56.7 and 59.6 million shares of outstanding common stock with a daily trading volume of more than 4.2 million shares.  See Motion For Class Certification (Doc. #111) at 13; Expert Report Of Chad Coffman, CFA, ¶ 22 (plaintiffs' Exhibit A).  Plaintiffs assert that the proposed class consists of "hundreds if not thousands" of members.  Motion For Class Certification (Doc. #111) at 13.  On this record, it would be impracticable to join all members of the proposed class.

[15]  Commonality requires plaintiffs to demonstrate that class members have "suffered the same injury."  Dukes, 131 S. Ct. at 2550-51; Falcon, 457 U.S. at 157-58.  In other words, the claims must depend upon a common contention which is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Dukes, 131 S. Ct. at 2551.  Here, plaintiffs assert common questions of law and fact regarding the falsity or misleading nature of public statements by defendants, the presence or absence of scienter and materiality of the alleged representations.  See, e.g., Forsta AP-Fonden v. St. Jude Med., Inc., — F.R.D. —, No. 12-3070 (JNE/HB), 2015 WL 9308224, at *3 (D. Minn. Dec. 22, 2015); Kaplan v. S.A.C. Capital Advisors, 311 F.R.D. 373, 378 (S.D.N.Y. 2015) (commonality requirement "plainly satisfied" in securities fraud case).

[16]  To satisfy the typicality requirement, a class representative must be part of the class (continued...)

13

Accordingly, the Court focuses on whether plaintiffs can satisfy the requirements of Rule 23(a)(4), i.e. whether plaintiffs have shown that the proposed representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

The adequacy of representation requirement is particularly important because it protects the due process interests of unnamed class members who will be bound by final judgment in the suit. See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 379 n.5 (1996); Lile v. Simmons, 143 F. Supp.2d 1267, 1277 (D. Kan. 2001) (due process requires court to "stringently" apply competent representation requirement because class members are bound by judgment even though they may not be aware of proceeding). Adequacy of representation turns on two questions: (1) whether named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) whether named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. See E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977); Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002). Here, the record does not reflect any conflicts of interest between class members and named plaintiffs or their counsel.[17] The Court thus focuses on the second question, i.e. whether plaintiffs have shown that

---

[16](...continued)
and "possess the same interest and suffer the same injury" as class members. Falcon, 457 U.S. at 156 (citations omitted). The burden is fairly easily met so long as named plaintiffs have claims similar to other class members. See Forsta, 2015 WL 9308224, at *3 (citing Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1540 (8th Cir. 1996)). Here, the claims of lead plaintiffs are similar to those of putative class members, i.e. all allegedly purchased or acquired YRC stock at prices which were inflated as a result of defendants' misconduct and suffered damages as a result.

[17]     Minor conflicts among class members do not defeat class certification; to defeat class certification, a conflict must be "fundamental" and go to specific issues in controversy. Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003). A fundamental conflict exists where some class members claim to have been harmed by conduct which resulted in benefit to other class members. See id. In such situations, the named representatives cannot adequately represent
(continued...)

14

the proposed class representatives and counsel will vigorously prosecute the action on behalf of the class.[18]

Both named plaintiffs and their attorneys must have the means and capacity to vigorously prosecute the class action.  See Edgington v. R.G. Dickinson & Co., 139 F.R.D. 183, 190 (D. Kan. 1991).  This requirement carries particular significance since inadequate representation would implicate due process rights of absentee class members who would be bound by final judgment in the case.  See Edgington, 139 F.R.D. at 190.  Thus, class representatives must have sufficient knowledge or understanding concerning what the suit is about to ensure that they are not simply lending their names to a suit controlled entirely by class counsel.  See In re Universal Serv. Fund. Tel. Billing Pract. Litig., 219 F.R.D. 661, 671 (D. Kan. 2004); Robinson, 219 F.R.D. at 186; 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1766 at 372 (3d ed. 2005).  In addition, class representatives have a fiduciary obligation to the putative class; therefore they must have the character and means to carry out that obligation,

---

[17](...continued)
the interests of the class because their interests are actually or potentially antagonistic to or in conflict with interests and objectives of other class members.  See id.

[18]      Plaintiffs assert that defendants bear the burden to prove that representation will be inadequate.  See Motion For Class Certification (Doc. #111) at 13 (citing Epitope, Inc. Sec. Litig., 1992 U.S. Dist. LEXIS 22705, at *10 (D. Or. Nov. 30, 1992)).  Plaintiffs also assert that they need only make a prima facie showing of adequate representation and then the burden shifts to defendants to rebut a presumption that named plaintiffs will adequately represent the class.  See Plaintiffs' Supplemental Reply (Doc. #203) at 2, 6 (citing Schwartz v. Celestial Seasonings, 178 F.R.D. 545, 552-53 (D. Colo. 1998)).  Plaintiffs' assertions are directly contrary to controlling case law.  See Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc., 725 F.3d 1213, 1218 (10th Cir. 2013) (abuse of discretion for district court to relax and shift strict burden of proof under Rule 23(a)).  As the parties seeking class certification, plaintiffs must affirmatively demonstrate compliance with Rule 23, including the requirement under subsection (a)(4) that they will fairly and adequately represent the class.  See Dukes, 131 S. Ct. at 2551; see also Rattray v. Woodbury Cnty., 614 F.3d 831, 835 (8th Cir. 2010); Berger v. Compaq Computer Corp., 257 F.3d 475, 481 (5th Cir. 2001); Robinson, 219 F.R.D. at 185.

including the ability to examine independently the decisions of counsel and play an active role in

the litigation to protect the interests of the class.  See Robinson, 219 F.R.D. at 186; Edgington, 139

F.R.D. at 195.

## I.        Whether Proposed Representatives Will Adequately Represent Interests Of Class

As noted, plaintiffs seek to appoint Better, Yonan, Alexiou, Dodd, Bryant Holdings, LLC,

Henard and Smolinski as class representatives.   Plaintiffs assert that the proposed class

representatives will adequately protect the class because they (1) have been actively involved in the

litigation from its earliest stages; (2) have supervised and monitored counsel; (3) have regularly

consulted counsel regarding the status of the case, strategy and settlement; (4) have actively

coordinated with other lead plaintiffs and/or proposed representatives; (5) have reviewed the

complaint; (6) have signed certifications regarding their securities transactions and understanding

that they are entitled to a *pro rata* share of any recovery; (7) have produced relevant documents,

answered interrogatories and traveled to Kansas for depositions by defense counsel; (8) understand

their role in the case; and (9) understand the nature of the action and claims in the case.  Plaintiffs'

Supplemental Reply (Doc. #203) at 1, 3-4, 12-14.  As discussed below, the record supports only

some of plaintiffs' assertions.

As a preliminary matter, the Court addresses the requisite level of knowledge and

understanding for class representatives in securities fraud litigation.  Plaintiffs assert that in complex

cases, class representatives need only have a basic understanding of the claims at issue.  Plaintiffs'

Supplemental Reply (Doc. #203) at 3.  The Court does not dispute this premise.[19]  To the extent that

---

[19]        Some courts have found that in complex class action securities cases, the adequacy
standard of Rule 23(a)(4) must reflect the governing principles of the PSLRA, i.e. Congress'
command that competent plaintiffs, rather than lawyers, direct such cases.  See, e.g., In re Enron
(continued...)

plaintiffs may be asserting that the Court need only inquire whether counsel are qualified to conduct the litigation, see id. at 11, or that mere participation in the litigation is sufficient to show adequate representation, see id. at 13, the Court disagrees. The relevant inquiry is whether the proposed class representatives have sufficient knowledge and understanding concerning the subject matter of the suit, so that they can take an active role in the litigation to protect interests of absentee class members, i.e. to ensure that they are not simply lending their names to a suit controlled entirely by class counsel. See In re Universal, 219 F.R.D. at 671; Robinson, 219 F.R.D. at 186; Kelley v. Mid-Am. Racing Stables, Inc., 139 F.R.D. 405, 410 (W.D. Okla. 1990); 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1766 at 372 (3d ed. 2005). In addition, the proposed class representatives must understand and accept their fiduciary obligations to the putative class and be willing and able to independently examine the decisions of counsel and

---

[19](...continued)
Corp. Sec., 529 F. Supp.2d 644, 675 (S.D. Tex. 2006). Under the reasoning of these cases, class representatives in securities class action cases – like lead plaintiffs under the PSLRA – must have a sufficient level of knowledge and understanding to be capable of controlling or prosecuting the action. See Enron, 529 F. Supp. 2d at 676 (citing Berger, 257 F.3d at 482-83). These courts hold that although class representatives need not be legal scholars and are entitled to rely on advice of counsel, they need to know more than that they were involved in a bad business deal, and their understanding of the action should not be limited solely to derivative knowledge acquired from counsel. See Enron, 529 F. Supp. 2d at 676 (citing Berger, 257 F.3d at 483-84). To the extent that such cases impose a knowledge requirement, they generally find that the threshold is not high and that knowledge of the case must be severely lacking to find the representative inadequate. See, e.g., In re Live Concert Antitrust Litig., 247 F.R.D. 98, 120-21 (C.D. Cal. 2007). In general, this Court agrees that proposed class representatives must demonstrate sufficient knowledge and ability to take an active role in and control the litigation to protect interests of absentee class members. This requirement applies in all cases, not solely PSLRA class actions. See, e.g., Ogden v. AmeriCredit Corp., 225 F.R.D. 529, 533 (N.D. Tex. 2005); Berger v. Compaq Computer Corp., 279 F.3d 313 (5th Cir. 2002) (petition for rehearing en banc) (no change in law regarding standard for adequacy inquiry under Rule 23(a)(4)); but see In re Theragenics Corp. Sec. Litig., 205 F.R.D. 687, 696 (N.D. Ga. 2002) (alleged deficiencies in class representatives irrelevant in securities fraud case prosecuted by able and experienced counsel).

play an active role in the litigation to protect the interests of the class.  See <u>Robinson</u>, 219 F.R.D. at 186; <u>Edgington</u>, 139 F.R.D. at 195.

As discussed, plaintiffs bear the burden to show that the proposed class representatives will adequately protect the interests of the class.  Accordingly, the Court has carefully reviewed the evidence which plaintiffs submit in this regard.[20]  Plaintiffs assert that the proposed class representatives are adequate because they (1) have actively participated in the litigation from the outset of the case,[21] see <u>Plaintiffs' Supplemental Reply</u> (Doc. #203) at 4; (2) have reviewed the complaint,[22] see <u>id.</u> at 12; (3) can articulate the basis for the litigation and how defendants wronged them,[23] see <u>id.</u> at 12; and (4) have traveled from out of state to give depositions,[24] <u>see id.</u> at 13.

---

[20]    Plaintiffs submit almost 800 pages of deposition testimony by the proposed representatives.  See exhibits to <u>Plaintiffs' Supplemental Reply</u> (Doc. #203).  The Court has reviewed the depositions in their entirety, as well as specific portions cited by plaintiffs.

[21]    In support of this assertion, plaintiffs cite Better's deposition testimony that he received documents from attorneys and answered specific questions that they posed to him.  See <u>Plaintiffs' Supplemental Reply</u> (Doc. #203) at 4 (citing <u>Videotaped Deposition Of Stan Better</u> at 87:16-88:6, Exhibit 1 thereto).  Plaintiffs cite nothing which supports any claim that Yonan, Alexiou, Dodd, Bryant Holdings, LLC, Henard or Smolinski have actively participated in the litigation.  See <u>id.</u>

[22]    In support of this assertion, plaintiffs cite deposition testimony by Better, Alexiou, Bryant and Yonan.  See <u>Plaintiffs' Supplemental Reply</u> (Doc. #203) at 12.  Plaintiffs cite nothing which supports their claim that Dodd, Henard and Smolinski haves so much as reviewed the complaint.  See <u>id.</u>

[23]    In support of this assertion, plaintiffs cite deposition testimony by Better, Alexiou, Bryant, Dodd and Yonan which states in very basic terms that defendants deceived and/or mislead shareholders.  See <u>Plaintiffs' Supplemental Reply</u> (Doc. #203) at 12.  Plaintiffs cite nothing which supports their claim that Henard and Smolinski can articulate the basis for the litigation and how defendants wronged them.  See <u>id.</u>

[24]    Plaintiffs cite nothing to support this assertion.  Plaintiffs' deposition testimony suggests that they all traveled to Kansas City to give depositions. Based on declarations in support of the third motion for preliminary settlement approval, it appears that Better resides in Ohio, Bryant
(continued...)

Plaintiffs also assert that the proposed representatives understand their role in the case and have coordinated with lead counsel and with each other.[25]   As set forth below, the Court examines whether specific testimony by each proposed class representative supports a claim that he or it will adequately represent the interests of the proposed class.

### A.     Stan Better

Plaintiffs cite deposition testimony which supports the following facts:  Better understands the basic factual claims and procedural history of the case and reviewed the complaint before it was filed.  See Plaintiffs' Supplemental Reply (Doc. #203) at 14.  Better reviewed the corrected stipulation of settlement filed on August 28, 2013 and as of September 21, 2015, he remained committed to that settlement.  See id. (citing Better Depo. at 69).  Better participated in answering discovery requests.  See id. at 15.  To prepare for his deposition, Better met with class counsel and reviewed documents and pleadings.  Better has a long history as an investor and is relatively sophisticated.  See id.

In addition, Better testified as follows:  Better learned of the lawsuit from a questionnaire from attorney Frank Johnson, who was looking at YRC for possible litigation.[26]  Better Depo. at

---

[24](...continued)
resides in Florida, Dodd resides in New Jersey, Alexiou resides in Toronto, Canada, and Smolinski resides in New York.  See Exhibits (Docs. #86-3, 86-5, 86-6, 86-7, 86-9) filed February 18, 2014. Henard resides in Texas.  See Henard Depo. at 15:10-12.  The Court cannot discern where Yonan resides.

[25]     Plaintiffs provide no record support for these assertions.  See Plaintiffs' Supplemental Reply (Doc. #203) at 3, 10, 12, 13.

[26]     Some courts have found that the fact that counsel solicited plaintiffs to participate in litigation does not affect adequacy of representation under Rule 23(a)(3).  See, e.g., Guido v. L'Oreal, USA, Inc., No. CV 11-1067 CAS, 2013 WL 3353857, at *8 (C.D. Cal. 2013); In re Vitamin C Antitrust Litig., 279 F.R.D. 90, 108 (E.D.N.Y. 2012).  But see Bodner v. Oreck Direct,
(continued...)

58:6:14, 89:20-90:2.  After completing the questionnaire, Johnson called and asked if he would serve as lead plaintiff.  Id. at 58:21-25.  Initially, Better talked with Johnson about once every three months.  Id. at 59:18-21.  The conversations became less frequent and in 2012, they went into a "black hole."[27]  Id. at 59:10-25.  Prior to his deposition, Better spent about 20 hours on the case.  Id. at 70:10-13.  Better believes that he has no responsibility to pay for court costs or attorney fees.  Id. at 70:18-71:8.  He expects that his attorneys will reimburse him for travel costs to attend his deposition.  Id. at 71:11-13.[28]

Before reviewing the complaints, Better had no knowledge of the information contained therein.  Id. at 66:11-16.  He learned about the information from his attorneys.  Id. at 66:17-67:1.

Better has never met or talked with the other lead plaintiffs.  Id. at 61:11-13.  Better does not understand that as of February 18, 2014, plaintiffs had asked to add additional class representatives in the case.  Id. at 70:5-9; see Second Amended Unopposed Motion For Preliminary Approval Of

---

[26](...continued)
LLC, No. C 06-4756 MHP, 2007 WL 1223777, at *2 (N.D. Cal. 2007) (counsel that advertised for plaintiffs driving force behind action).  As discussed below, the Court finds inadequate representation based on other grounds.  Therefore, it need not consider whether or how the solicitation of plaintiffs affects the analysis in this case.

[27]   Plaintiffs filed this case on February 7, 2011. Accordingly, the "black hole" occurred during the pendency of this suit.

[28]   Courts take different approaches as to whether lack of financial commitment affects adequate representation.  See, e.g., In re Intel Corp. Microprocessor Antitrust Litig., 526 F. Supp.2d 461, 464 (D. Del. 2007) (financial status of class representatives irrelevant to class certification issues where counsel responsible for court costs); Brink v. First Credit Res., 185 F.R.D. 567, 571 (D. Ariz. 1999) (class representative's willingness to pay pro share of litigation expenses sufficient financial commitment to show adequate representation).  As discussed below, the Court finds inadequate representation based on other grounds.  Therefore, it need not consider whether or how plaintiffs' lack of obligation to pay litigation costs affects the analysis in this case.

Class Action Settlement ("Third Motion For Preliminary Settlement Approval") (Doc. #85) filed February 18, 2014.

> Better explained his understanding of his role as lead plaintiff as follows:
>
> A. I would say to act on behalf of the shareholders as the lead plaintiff.
> Q. How does being a lead plaintiff differ from being just a plaintiff in a non-class action case?
> A. I get the luxury of sitting here.

Id. at 62:10-17.

> On this record, plaintiffs have shown that Better has knowledge and understanding of the case and a willingness to actively participate. Plaintiffs provide scant evidence, however, to support their claim that Better understands and accepts his role as fiduciary to the class. The Court is particularly troubled by the fact that Better has never met or talked with the other lead plaintiffs. As noted, the Court appointed Better and YRC Investors to act as co-lead plaintiffs pursuant to their stipulation under the PSLRA. In the stipulation, co-lead plaintiffs stated that they were "determined to work together and cooperate in the best interests of the class" and that they would "coordinate regularly throughout the action to prosecute this action effectively and efficiently on behalf of the Class." Stipulation (Doc. #25) ¶ 7. Clearly, if co-lead plaintiffs have never communicated with one another, they have not fulfilled their commitments in this regard. The lack of communication between lead plaintiffs leaves the Court to question whether they are simply lending their names to a suit controlled entirely by class counsel. On this record, plaintiffs have not shown that Better will adequately protect the interests of absent class members.

### B.    Bryant Holdings, LLC[29]

Plaintiffs cite deposition testimony which supports the following facts: Prior to his deposition, Bryant communicated with class counsel a few times by telephone and e-mail regarding progress of the case. Plaintiffs' Supplemental Reply (Doc. #203) at 14 (citing Bryant Depo. at 54:23-55:9). Bryant demonstrated a layman's understanding of his cause of action and has knowledge and experience with securities litigation. See Plaintiffs' Supplemental Reply (Doc. #203) at 14. Bryant was aware of the dollar value of the proposed settlement and had read the agreement. See id.

In addition, Bryant testified as follows: Bryant does not remember how he became involved in the case. Bryant Depo. at 54:16-22. YRC Investors Group is a fictitious group which encompasses investors that are suing YRC under the complaint. Id. at 49:1-4. It is not an entity. Id. at 49:15-19. Bryant understands that YRC Investors Group was "formed basically to consolidate a lot of names." Id. at 50:8-14. Bryant had no involvement in the formation of YRC Investors Group. Id. at 50:2-7. His company, Bryant Holdings, LLC is a member of the group. Id. at 49:23-50:5. YRC Investors Group has no function apart from this litigation.[30] Id. at 50:15-17.

Bryant has reviewed complaints and interrogatories in the case. Id. at 56:8-64:18. Bryant learned about the settlement agreement right after the parties agreed to it. Id. at 67:12-14. Bryant did not have any communications with counsel while settlement negotiations were occurring. Id. at 67:15-19. Bryant could not recall how much time he has spent on the case. Id. at 71:5-9. Bryant

---

[29]    As discussed, Bryant owns 99 per cent of Bryant Holdings, LLC, which is a member of YRC Investors Group. Plaintiffs propose that Bryant Holdings, LLC, serve as class representative.

[30]    Bryant apparently did not discuss whether he has communicated with Better or the other members of YRC Investors Group.

understands that he is not responsible for any court costs.  Id. at 71:10-15. Counsel paid the plane and hotel costs for him to travel to the deposition.  Id. at 71:23-72:1.

When asked to state his understanding of his role in the case, Bryant stated that Bryant Holdings, LLC is one of the lead plaintiffs under the YRC Group.  55:19-25.  When asked to state his understanding of the duties and responsibilities as lead plaintiff, Bryant stated as follows:

> A. As lead plaintiff, I believe I'm supposed to be cognizant of the facts in the case.
> Q. Anything else?
> A. Lew Kahn and his firm represents us.

56:1-7.

Bryant, i.e. the principal of Bryant Holdings, LLC, has a basic knowledge and understanding of the case and a willingness to participate in the case.  Plaintiffs have not shown, however, that he has an understanding of the fiduciary role of Bryant Holdings, LLC relative to the class.  The Court is also concerned about the apparent lack of participation by lead plaintiffs in settlement negotiations which have led to four separately proposed settlement agreements.  Again, the lack of communication leaves the Court to question whether lead plaintiffs have simply lent their names to a suit controlled entirely by class counsel.  On this record, plaintiffs have not shown that Bryant Holdings, LLC will adequately protect the interests of absent class members.

**C.     George Alexiou**

Plaintiffs cite deposition testimony which supports the following facts:  Alexiou participated in this litigation, periodically speaking with or emailing class counsel as the case progressed or when they provided documents to read or sign.  See Plaintiffs' Supplemental Reply (Doc. #203) at 15. Alexiou is heavily involved in his own investing research.  See id.  Before trading in YRC, he relied on sources such as Yahoo Finance, Google Finance, CNBC and Mad Money.  See id.

23

In addition, Alexiou testified as follows: In 2010 or 2011, he read an article in Google Finance about YRC investors who lost money.  Videotaped Deposition Of George Alexiou at 77:18-78:1, Exhibit 4 to Defendants' Motion To Supplement Record (Doc. #189).  The article invited readers who had lost money to contact the offices of attorney Lewis Kahn.  Id. at 78:2-7. After reading the article, Alexiou contacted Kahn and agreed to become a lead plaintiff in the case. Id. at 78:11-79:2, 107:11-19.  Alexiou reviewed the complaints but does not remember whether he saw them before or after they were filed.  Id. at 81:6-83:19.

YRC Investors Group is comprised of a bunch of people who, like Alexiou, invested and lost money in YRC stock.  Id. at 74:4-6, 77:4-11.  Alexiou does not know whether it is a legal entity. Id. at 74:13-14.  He does not remember the names of the other members and has never talked to any of them.  Id. at 74:23-75:6.  The only function of YRC Investors Group is to act as plaintiff in this lawsuit.  Id. at 75:23-76:1.

Alexiou has spent at least 20-30 hours working on the lawsuit.  Id. at 104:22-105:1.  He has had substantive discussions with attorneys on the phone about 10 to 15 times.  Id. at 105:16-18, 106:7-9.  The night before his deposition, he first met his attorneys in person.  Id. at 106:18-25. Alexiou believes that he has no responsibility to pay for costs in the case.  Id. at 147:1-148:6.  His attorneys paid for his travel and hotel expenses to attend the deposition.  Id. at 148:12-149:8.

Alexiou described his duties and responsibilities as class representative as follows:

Q. Do you have an understanding of what the duties and responsibilities of a class representative are?
A. Yeah. To represent the other people that maybe weren't as – didn't have as much invested, like the little guys, the people that – like the lead plaintiff or – is it similar to that? I believe.
Q. And what is it that you understand that you are required to do in the course of representing the little guys?
A. What am I required to do?

24

Q. Yes.
A. Just to give my side of the story or what I know and what I did.
Q. Anything else?
A. I'm sure there's other things, but I'm not you know, I haven't been briefed on it.
Q. Do you have an understanding as to how the role of a class representative differs from the role of a plaintiff in a lawsuit like this?
A. No, I don't. Can you tell me that?

Id. at 114:4-115:1.

On cross exam by his own counsel, Alexiou testified as follows:

Well, the word "representative" really for me spells it all out, but, you know, there's other people involved, and I don't believe, you know, we could have hundreds or thousands of people that owned YRC stock come and do this sort of thing, so I know that, you know, when I first heard about it, you know, I got involved. And I'm not sure if it's like first come, first served or how that works, but I figure I had enough shares that maybe my shares represent more than someone else that's not, I guess, qualified to be a lead plaintiff or, you know, that sort of thing. So I guess I'm representing them, though I don't see all their names, but, you know, they'll see my name because they must have something that, you know, they might read upon or they may be getting in the mail by you or somebody else.
Q. And do you believe everything you've done in this case, whether it's communicating with your lawyers or discussing the settlement or sitting for a deposition today, is that done on behalf of other shareholders?
MR. LOGAN: Objection. Leading.
A. I believe I'm representing, you know, other people that have shares in [YRC]. I never see them, I guess, but I believe I'm representing them in some way. Obviously they're not here, I am. I don't think somebody else is representing me right now that I know of except for you.

Alexiou has a basic knowledge and understanding of the case and a willingness to actively participate in the case. Plaintiffs provide scant evidence, however, to support their claim that Alexiou understands and accepts his role as fiduciary to the class. At most, Alexiou seems to have a vague understanding that in some way he is representing other shareholders. The Court is also troubled by Alexiou's statements that he does not know and has never talked with other members of YRC Investors Group. As discussed, to obtain appointment as co-lead plaintiffs, the parties stipulated that co-lead plaintiffs, i.e. Better and YRC Investors Group, were "determined to work

together and cooperate in the best interests of the class" and that they "shall coordinate regularly throughout the action to prosecute this action effectively and efficiently on behalf of the Class." Stipulation (Doc. #25) ¶ 7.   Clearly, if the members of YRC Investors Group have never communicated with one another, they have not fulfilled their commitments in this regard.  The lack of communication between lead plaintiffs leaves the Court to question whether they are simply lending their names to a suit controlled entirely by class counsel.  On this record, plaintiffs have not shown that Alexiou will adequately protect the interests of absent class members.

### D.    Robert Dodd

Plaintiffs cite deposition testimony which supports the following facts:  Dodd believes that YRC misled investors by adopting a positive attitude on the advancement of strategies.   See Plaintiffs' Supplemental Reply (Doc. #203) at 16.  Dodd accurately described the class and class period.  Id.  He described his responsibilities to represent other shareholders and communicate with counsel.  See id. (citing Videotaped Deposition Of Robert Paul Dodd at 125:3-19, Exhibit 5 thereto).  Dodd performed independent research on YRC and its stock.  See Plaintiffs' Supplemental Reply (Doc. #203) at 16-17.

In addition, Dodd testified as follows:  Dodd became involved in the lawsuit after he saw an article in a trade journal which invited YRC shareholders who had lost money to contact Kahn if they were interested in being a plaintiff in the lawsuit.  Dodd Depo. at 91:17-21, 92:11-13. 92:11-93:4.  Dodd skimmed documents which the attorneys sent him and called with questions before signing anything which he did not understand.  Id. at 102:15-103:16.  Dodd knows that the parties had an agreement to settle the case for $11 million.  Id. at 11:1-10.  He has no understanding of the terms of the settlement and did not communicate with lawyers while negotiations were in

progress.[31]  Id. at 111:11-17.  Prior to his deposition, Dodd spent about approximately 25-40 hours

on the case.  Id. at 112:13-20.  Dodd understands that he will not pay for any costs of the case.  Id.

at 112:21-25.  His attorneys paid expenses for him to travel to deposition.  Id. at 113:5-13.

YRC Investors Group is a group of investors/YRC shareholders that was formed before

Dodd came on board.[32]  Dodd Depo. at 90:9.  Dodd has never met or communicated with Bryant,

Alexiou or Yonan.  Id. at 90:22-91:8.  The purpose of YRC Investors Group is to function as a party

in this litigation.  Id. at 91:9-12.  Dodd does not know Better and has never communicated with him.

Id. at 95:14-17.

When asked whether he understood what the role of class representative entails, Dodd stated

as follows:  "I'm learning as I go.  I've never done this before, so, no."  Id. at 97:16-19.

On cross exam by his own counsel, Dodd testified as follows:

Q.·Do you know what a class representative does?·
A.·I do.·I was – I was confused.· It's the·first time I've ever done it, but knowing
what·my responsibilities have been, as I said, I do·represent the other shareholders,
but also·we've communicated very regularly the last few·years via e-mail or phone
call.· I think I've given you not direction, but I've given you ·input on the events that
have taken place from my perspective which I've shared with you and I think you've
incorporated those into things that you've written up in some of the things that I've
received and just, you know, the exchange of information, flying out here for the
deposition, trying to be helpful that way, so that's – that's how I know it from my
perspective.

Id. at 125:3-19.

_____

[31]     As noted, in support of the third motion for preliminary settlement approval, Dodd
signed a declaration which stated that he had reviewed the proposed settlement and plan of
allocation, understood the methodology used for computing the recognized loss per share and pro
rata distribution to groups in the class, and believed that the settlement and planned allocation were
fair and reasonable for himself and class members.  See Doc. #86-6.

[32]     Dodd believes that Bryant formed the group.  See Dodd Depo. at 90:8-13.  Bryant
testified, however, that he had no involvement in forming the group.  See Bryant Depo. at 50:2-7.

Dodd has a basic knowledge and understanding of the case and a willingness to actively participate in the case. Plaintiffs provide scant evidence, however, that he understands and accepts his role as fiduciary to the class. Also, the Court is troubled that Dodd does not know and has never talked with the other members of YRC Investors Group, that he has no understanding of the terms of the proposed settlements and that he did not communicate with lawyers while negotiations were in progress. As discussed, to obtain appointment as co-lead plaintiffs, the parties stipulated that co-lead plaintiffs, i.e. Better and YRC Investors Group, were "determined to work together and cooperate in the best interests of the class" and that they would "coordinate regularly throughout the action to prosecute this action effectively and efficiently on behalf of the Class." Stipulation (Doc. #25) ¶ 7. The lack of communication between lead plaintiffs, and between counsel and Dodd regarding the proposed settlement, leaves the Court to question whether lead plaintiffs are simply lending their names to a suit controlled entirely by class counsel. On this record, plaintiffs have not shown that Dodd will adequately protect the interests of absent class members.

###    E.    Frank Yonan

Plaintiffs cite deposition testimony which supports the following facts: Yonan understands details relating to the class period and the claims in this case. See Plaintiffs' Supplemental Reply (Doc. #203) at 15-16. Yonan lost around $50,000 as a result of his investments in YRC. Videotaped Deposition Of Frank Yonan at 64:12-18, Exhibit 2 to Defendants' Motion To Supplement Record (Doc. #189). If defendants offered to pay Yonan that amount, he would not walk away from this lawsuit. See id. at 64:19-25. Yonan understands his role as plaintiff in this case is "to be the voice for shareholders." Id. at 46:10-13. Once he began investing in YRC, Yonan became interested in and became better educated about investing and trading. See Plaintiffs'

<u>Supplemental Reply</u> (Doc. #203) at 16.  He regularly monitored his Wells Fargo statements and kept abreast of YRC share prices.  <u>See</u> <u>id.</u>  Yonan was an employee of YRC and kept close tabs on how the company performed and what the CEO said to YRC employees.  <u>See</u> <u>id.</u>

In addition, Yonan testified as follows: Yonan read about the possibility of a class action lawsuit on Yahoo Business News and called the attorneys to get involved.  <u>Yonan Depo.</u> at 42:19-44:15.  When he first became involved, Yonan would "occasionally" communicate with the lawyers by telephone or email.  <u>Id.</u> at 46:4-6.   Yonan is not sure if he has seen the settlement agreement.  <u>Id.</u> at 51:15-16.  Prior to his deposition, Yonan had spent approximately five to 10 hours on the case.  <u>Id.</u> at 66:20-22.  Yonan believes that he is not responsible for any costs associated with the case.  <u>Id.</u> at 54:2-4.  His attorneys paid for him to travel to his deposition.  <u>Id.</u> at 54:5-6.

Yonan knows that other plaintiffs are involved in the suit; he does not know how many or what their names are.  <u>Id.</u> at 44:24-45:8.  He spoke with the other plaintiffs on a conference call with the attorneys.  <u>Id.</u> at 45:9-15.  He has not spoken with them without a lawyer present.  45:17-19.

When asked to describe his claims in the case, Yonan testified as follows:

Q. Do you understand why you are suing the defendants?
A. Yes.
Q. Why are you suing the defendants?
A. Because . . .
Q. It's okay, you can stop looking at your attorney.
A. Yeah, yeah. It's – that's lawyer stuff I guess.
Q. Well, I'm asking for your understanding of it, of why you are suing the defendants in this case.
A. My understanding is what they did was not correct and people lost, a lot of good people lost.

<u>Id.</u> at 46:20-47:9.

When asked whether the latest settlement for $11 million was fair and reasonable, Yonan

replied, "I'm sure."[33] <u>Id.</u> at 52:4-9.  When asked whether (as lead plaintiff) he was committed to settling the case for $11 million, Yonan stated that the decision was not up to only him and that he would have to get with the other lead plaintiffs.  <u>Id.</u> at 52:10-17.

Yonan seems willing to actively participate in the case, on some level.  Plaintiffs provide scant evidence, however, that he has a basic knowledge and understanding of the case, or that he understands and accepts his role as fiduciary to the class.  Again, for reasons discussed, the Court is dismayed by evidence that Yonan does not know other members of YRC Investors Group and that he does not know whether the proposed settlement was fair and reasonable.  The lack of communication between lead plaintiffs and their lack of understanding of the proposed settlements leaves the Court to again question whether they are simply lending their names to a suit controlled entirely by class counsel.  On this record, plaintiffs have not shown that Yonan will adequately protect the interests of absent class members.

**F.      John Henard**

Plaintiffs cite deposition testimony which supports the following facts: Henard has a basic understanding of claims in the case.  <u>See</u> <u>Plaintiffs' Supplemental Reply</u> (Doc. #203) at 17.  He has been investing with brokers since the 1980s.  <u>See</u> <u>id.</u>  More recently, Henard began doing his own research and making his own investment decisions.  <u>See</u> <u>id.</u>  Through his research, Henard developed a thorough understanding of events in 2008 and 2009 that serve as the basis of this suit. <u>See</u> <u>id.</u>

---

[33]      As discussed, in support of the third motion for preliminary settlement approval, Yonan signed a declaration which stated that he had reviewed the proposed settlement and plan of allocation, understood the methodology used for computing the recognized loss per share and pro rata distribution to groups in the class, and believed that the settlement and planned allocation was fair and reasonable for himself and class members.  <u>See</u> Doc. #86-4.

In addition, Henard testified as follows: Henard saw a notice on a website about the class action lawsuit and contacted the attorneys to get involved. Videotaped Deposition Of John Henard at 8:13-23, 13:15-14:8, Exhibit 3 to Defendants' Motion To Supplement Record (Doc. #189). Henard had lost quite a bit of money on YRC stock and thought that he might have a chance to recoup some of the losses. Id. at 10:3-5. Henard remembers one substantive conversation with attorneys between the time that he agreed to be a lead plaintiff and the time of his deposition. Id. at 45:13-46:3. In that conversation, the attorney told him that a settlement had been reached but that the judge would not go for it. Id. at 46:14-24. Attorneys emailed Henard documents that he read and "sort of" understood. Id. at 48:9-13.

When asked about his understanding of class representation, Henard testified as follows:

Q. (by Mr. Logan) So do you know what a class is in the context of civil litigation?
A. No.
Q. Do you know what it means to be represented in civil litigation by another person?
A. I guess I do. Let's say yes.
Q. Okay. What is your understanding of that?
A. Well, that they would represent me to try to help me get some of my money back.
Q. And when you say "they," do you mean the lawyers?
A. Yeah, yes.
Q. Okay. Do you have any other understanding of a means by which someone might represent you in the context of this lawsuit?
A. I don't really understand what you're saying.
Q. Okay. Do you have any understanding of the circumstances under which someone might act on your behalf in this lawsuit, other than the lawyers?
A. No.
Q. Do you have any understanding of the circumstances under which you would act on behalf of someone in this lawsuit?
MR. DONA: Objection, speculation.
A. I don't --now, what --what --say it again.
Q. (By Mr. Logan) Okay. Do you have any understanding of the circumstances under which you might act on behalf of someone else in this lawsuit?
MR. DONA: Same objection.
A. I don't know what you mean by that.
Q. (By Mr. Logan) Okay. Which part of my question are you having trouble with?
A. Now, who would I be acting on behalf of?

Q. Do you have any understanding of that?

A. Well, I don't really know what you're talking about, no.

Id. at 10:12-11:24.

Henard further testified as follows:

Q. (By Mr. Logan) Do you have an understanding as to the persons on whose behalf this lawsuit is being pursued?

MR. DONA: Objection, calls for a legal determination.

A. Can you repeat that?

Q. (By Mr. Logan) Yeah.  Do you have any understanding as to the persons on whose behalf this lawsuit is being pursued?

A. Can you clarify that a little more?

Q. Sure.  Let's see. When we started out, you said you don't know what a class action is; is that right?

A. Well –

MR. DONA: Objection

A. – vague idea, but, no.

Q. (By Mr. Logan) And you don't know what a class member is?

MR. DONA: Objection, mischaracterizes the testimony.

A. What I understand, a class action means there's more than one person. Is that right?

Q. (By Mr. Logan) If that's your understanding, that's fine.  So then let me ask it this way: Do you know who are members of the class in this action?

A. I probably read it in those papers that I have got, but I don't remember them.

Id. at 53:18-54:23.

When asked whether he had looked at the complaint in the case, Henard stated as follows:

They all look alike to me, but I think so. Let me look at it here for a minute and see. This is legal mumbo-jumbo, I don't understand it. I can read it. If it was something that I could understand, I could read it and remember it for a few minutes. But I don't read books anymore because I can read this whole page and get down to the bottom of it and not remember a thing I read.  But – and whenever I get something online, I usually save it into my Favorites on my emails. I don't remember. I'm pretty sure I've gotten it, but I don't remember.

Id. at 56:17-57:5.

When asked to describe his role in the litigation, Henard stated as follows:

Q. What is your understanding of your role in this litigation?

A. My role. Okay, to – I don't know. As far as role goes, when you say "role," do like they do on some shows, give me four guesses and I'll tell you which one – I can't remember all those terms.

Q. Unfortunately, that's not the way a deposition works.

A. Well, I can probably get it right if you would give me the ones to remember.

Q. Do you know what you are supposed to do in this lawsuit?

MR. DONA: Objection, vague.

A. What I'm supposed to do?

Q. (By Mr. Logan) Yes.

A. Speak as honestly and frank as I can to you.

Q. Okay. Anything else?

A. Well, if you don't ask it, I can't answer it.

Id. at 60:21-61:14.

When asked to describe what it means to be a class representative, Henard stated as follows:

Q. Do you have an understanding as to what it means to be a class representative?

A. Well, I'm representing the class.

Q. And what does that mean?

A. It means I'm down here today, I would say.

Q. Anything else?

A. Just be as honest as I can with you.

Q. Other than testifying honestly at this deposition, are there any other duties that you understand that a class representative has?

A. No, I don't know any.

Id. at 61:15-25.

Henard did not have any discussions with his attorneys regarding negotiations of the settlement. Id. at 64:9-13. With regard to the proposed plan of allocation under the settlement, Henard signed a verification that he understood the proposed settlement and plan of allocation, and that he believed that it was fair and reasonable to the class.[34] At his deposition, Henard did not remember what he understood at the time he signed the document, or whether he even had an

---

[34]     See Declaration Of Proposed Representative John Henard In Support Of Second Amended Unopposed Motion For Preliminary Approval Of Class Action Settlement (Doc. #118-6) filed June 11, 2015 and (Doc. #86-8) filed February 18, 2014.

33

understanding at that time.  <u>Id.</u> at 68:25-69:8.  When asked the basis for his statement that the plan of allocation was fair and reasonable to class members, Henard stated, "I guess I'm trusting."  <u>Id.</u> at 69:9-14.  When asked who he was trusting, Henard replied, "You, him, her, him.  I mean, I kind of believe everybody is honest and – you know, and if you are, then that's a good statement."  <u>Id.</u> at 69:16-18.  When he signed the document which stated that he believed the plan of allocation was fair, he was simply trusting whoever drafted it.  <u>Id.</u> at 70:5-8.  In that regard, Henard stated, "This is all way over my head, so, you know, I have kind of got to trust somebody."  <u>Id.</u> at 70:8-10.[35]

Henard has no idea who is responsible for paying court costs of the lawsuit.  <u>Id.</u> at 62:1-25. His attorneys paid for him to travel to attend the deposition.  <u>Id.</u> at 63:1-10.

On this record, plaintiffs have not come close to showing that Henard will adequately represent the interests of the class.  He clearly does not understand his obligations to the class. Henard admitted that he signed a verification stating that the proposed settlement was fair to the class when in fact, he did not understand what he was signing and merely trusted whoever drafted the document.  On these facts, plaintiffs have not shown that Henard is willing and able to adequately protect the interests of the class.[36]

### G.     David Smolinski

Plaintiffs cite deposition testimony which supports the following facts: Smolinski agreed to

---

[35]     Henard also testified that he's "not really too smart," that his mother had Alzheimer's real bad and that he thinks he's right behind her.  <u>Id.</u> at 89:7-16.

[36]     The fact that Henard is either unwilling or unable to protect the interests of the class is particularly troubling because plaintiffs added him as a class representative for the express purpose of curing deficiencies identified in the Court's order overruling the parties' second motion for preliminary settlement approval.  <u>See</u> <u>Third Motion For Preliminary Settlement Approval</u> (Doc. #85).  Plaintiffs had specifically recruited Henard to represent previously unrepresented distribution groups in that settlement scenario.  <u>See id.</u> at 2, 4-5,  7.

become part of the lawsuit because he never liked YRC and he believes that somebody at YRC lied. See Plaintiffs' Supplemental Reply (Doc. #203) at 17 (citing Videotaped Deposition Of David Smolinski at 46:20-47:6, Exhibit 7 thereto); see also Smolinski Depo. at 47:18-24. Smolinski understands that he is representing others in the class, but he does not understand who the others in the class are or what a class is in the context of a class action. See Smolinski Depo. at 44:2-23. Smolinski stated that representing others in the class is "the right thing to do." Id. at 44:6-8. Smolinski lost around $2,300 as a result of his investments in YRC. See id. at 72:23-73:21. If defendants offered to pay Smolinski that amount, he would not accept because "I don't think it would do justice to the rest of the class." Id. at 74:4-6. Smolinski stated that he does not know how much the class lost and that "at this state of the game, $2,300 is not going to make or break me." Id. at 74:6-8.

In addition, Smolinski testified as follows: Smolinski first learned of the suit when attorney Johnson contacted him by telephone. Id. at 44:24-45:6. Smolinski has signed documents in the case without understanding them. Id. at 62:1-64:18. Prior to his deposition, Smolinski spent between 30 to 60 minutes on the case. Id. at 70:4-24. Smolinski does not know any of other plaintiffs in case and has never met them. Id. at 43:19-23.

When asked to describe his understanding of his responsibility as representative of class, Smolinski testified as follows:

> A. I'm just a representative of the class, so whatever they need from me I will do.
> Q. Do you have any understanding as to what that job entails?
> A. I do not totally.
> Q. Do you have any understanding?
> A. Just that I'm going to be a representative of the class.
> Q. Okay. Can you tell us anything else about your understanding as to what a representative of the class is supposed to do?
> A. No, but I'll study.

Id. at 53:25-54:16.   When asked whether he had a plan to study responsibilities as class representative, Smolinski replied, "No. . . I just thought of it just now." Id. at 54:17-21.  Smolinski stated that he did not know what he would study, but that he "would read up on it" and "Google" it.  Id. at 54:22-55:7.

Smolinski cannot describe the claims in the case or give a general understanding as to what the claims are about.  Id. at 56:5-10.  Plaintiffs specifically recruited Smolinski to cure deficiencies in the second motion for preliminary settlement approval, see Third Motion For Preliminary Settlement Approval (Doc. #85) at 2, 4-5, 7; but he did not see the ensuing third stipulation of settlement, see id. at 61:9-12.  Smolinski signed a verification which stated that he understood the proposed settlement and plan of allocation, and that he believed that it was fair and reasonable to the class.[37]  At the time he did so, Smolinski did not read the document and did not understand what he was signing.  Id. at 62:1-11.  He assumed that it was a form that he had to sign and send back. Id. at 62:21-22.

Smolinski does not know who is responsible for court costs of the litigation.  Id. at 71:18-72:1.  He understands that counsel will reimburse his travel expenses to attend the deposition.  Id. at 72:5-14.

On this record, plaintiffs have not shown that Smolinski will adequately represent the interests of the class.  He does not understand the claims in the case or his obligations to the class. Moreover, Smolinski admitted that he signed a verification that the proposed settlement was fair to the class when in fact, he did not read the document and did not know what he was signing.  On

---

[37]     See Declaration Of Proposed Representative David Smolinski In Support Of Second Amended Unopposed Motion For Preliminary Approval Of Class Action Settlement (Doc. #118-7) filed June 11, 2015 and (Doc. #86-9) filed February 18, 2014.

these facts, plaintiffs have not shown that Smolinski is willing and able to adequately protect the interests of the class.

For reasons discussed, plaintiffs have not shown that the proposed representatives, i.e. Better, Yonan, Alexiou, Dodd, Bryant Holdings, LLC, Henard and Smolinski will adequately protect the interests of absent class members. In a footnote in their supplemental reply, plaintiffs state in the event the Court finds that no named plaintiff satisfies the adequacy requirement, the appropriate remedy is to substitute a new representative. See Plaintiffs' Supplemental Reply (Doc. #203) at 18 n.6. The Court disagrees. Since its inception more than five years ago, this case has been wrought with inadequate representation. As discussed, the Court has four times denied preliminary approval of proposed settlements due to inadequate representation. Moreover, the deposition testimony reviewed in this order demonstrates that despite the parties' representations to the Court that co-lead plaintiffs would "work together and cooperate in the best interests of the class" and "coordinate regularly throughout the action," the lead plaintiffs have never communicated with one another. To the contrary, it appears that counsel assembled a litigation fictitious group, i.e. YRC Investors Group, to serve at its sole direction and control as lead plaintiff in this litigation.[38]

---

[38]   As discussed, the members of YRC Investors Group have never communicated with each other and do not know how the group was formed. Dodd, who came on board after the group was formed, believes that Bryant started it. Dodd Depo. at 90:2-13. Bryant, however, testified that he was not involved in forming the group. Bryant Depo. at 50:2-7. Bryant understands that YRC Investors Group is a "fictitious" group that was formed to consolidate a lot of names in this lawsuit. Id. at 49.

Alexiou became a member of YRC Investors Group after reading an article which asked YRC investors to contact attorney Kahn. Alexiou not know or remember the names of other members of the group, and he does not whether it is a legal entity. Its only function is to act as plaintiff in this lawsuit. Alexiou Dep. at 74-75.

Yonan became involved in the suit after talking with attorney Kahn. He knows that other plaintiffs are involved in the suit, but he does not know how many or their names. He has spoken

(continued...)

37

Plaintiffs' request to substitute a new representative is much too little too late.  See, e.g., Eslava v. Gulf Tel. Co., No. 04-00297-KD-B, 2007 WL 229822, at *7 (S.D. Ala. Aug. 7, 2007).[39]

## II.      Whether Proposed Counsel Will Adequately Represent Interests Of Class

Even if the proposed representatives were adequate, plaintiffs have not shown that proposed counsel will adequately protect the interests of the class.  As discussed, plaintiffs ask the Court to appoint the law firms of Johnson & Weaver, LLP and Kahn, Swick & Foti LLP as counsel for the proposed class.[40] Plaintiffs assert that proposed counsel are highly qualified and experienced in prosecuting complex class action litigation involving securities and consumer fraud.  Lead Plaintiffs Motion For Class Certification (Doc. #111) at 15-16 and Exhibits B and C thereto (Docs. #112-2, 112-3) filed May 29, 2015.

Because proposed counsel have co-handled the case before this Court for the past five years, the Court has an excellent vantage point from which to determine their qualifications and

---

[38](...continued)
with other plaintiffs on a conference call with attorneys.  He has never spoken to other plaintiffs without a lawyer present.  Yonan Depo. at 44-45.

Dodd became involved in the suit after reading an article which asked YRC investors to contact attorney Kahn.  Dodd Depo. at 91-92.  Dodd does not know if YRC Investors Group is a legal entity.  He has never communicated with other members of the group.  Id. at 90-91.

As noted, on February 7, 2011, Bryant Holdings, LLC filed the initial complaint in this case.  Attorneys representing Bryant Holdings, LLC included Lewis Kahn and Kim Miller of Kahn Swick & Foti, LLC.  See Doc. #1.  Two months later, on April 8, 2011, YRC Investors Group filed a motion asking to be appointed lead plaintiff and to have Kahn Swick & Foti, LLC serve as lead counsel in the case.  See Doc. #18.  Under the circumstances, the Court concludes that lawyers with Kahn Swick & Foti, LLC formed YRC Investors Group for the sole purpose to serve as lead plaintiff in the case.

[39]      The Court notes that no other plaintiffs appear on the docket sheet or requested to be appointed as lead plaintiffs in the case.

[40]      As noted, pursuant to the parties' stipulation, the Court previously approved plaintiffs' selection of Johnson & Weaver, LLP and Kahn, Swick & Foti LLP to serve as co-lead counsel in the case.  See Order (Doc. #35); Stipulation (Doc. #25) ¶ 8.

38

experience, and whether they will effectively pursue the interests of absent class members. See, e.g., Rattray, 614 F.3d at 836; Niemeyer v. Williams, 910 F. Supp.2d 1116, 1132 (C.D. Ill. 2012) (court can consider performance of counsel in present case); Kandel v. Brother Int'l Corp., 264 F.R.D. 630, 634 (C.D. Cal. 2010) (court may consider actual progress of proceedings to date). Based on counsel's performance to date, the Court easily concludes that the adequate representation requirement is not met. In addition to previously expressed concerns regarding counsel's repeated inability to present a settlement and class notice in a form which the Court could approve, the Court notes the following deficiencies: (1) to persuade the Court to appoint co-lead plaintiffs and co-lead counsel in the case, counsel signed and filed a stipulation which represented that co-lead plaintiffs would coordinate regularly throughout the action, yet co-lead plaintiffs have never communicated with one another and have rarely communicated with counsel during the five-year pendency of the case; (2) counsel did not involve lead plaintiffs in settlement negotiations; (3) counsel have not ensured that lead plaintiffs and proposed class representatives understand their representational duties to the putative class; and (4) counsel's briefing on class certification is replete with misstatements of fact and law.[41] On this record, counsel has demonstrated a lack of diligence, expertise and integrity that cannot be overcome by conclusory reference to their history in other cases. See, e.g., Niemeyer, 910 F. Supp. at 1132. The record is devoid of evidence that counsel educated class representatives about their fiduciary obligations to the putative class, provided them

---

[41]     For instance, plaintiffs wrongly assert that defendants bear the burden to prove that representation will be inadequate, see Motion For Class Certification (Doc. #111) at 13, and that once they make a prima facie showing of adequacy the burden shifts to defendants to rebut a presumption that named plaintiffs will adequately represent the class, see Plaintiffs' Supplemental Reply (Doc. #203) at 2, 6. Also, plaintiffs falsely assert that lead plaintiffs and proposed class representatives have coordinated with each other, see id. at 13, and that the proposed class representatives understand their role in the case, see id. at 3, 10, 12.

necessary information to carry out that obligation, or in any way advanced their ability to independently examine the decisions of counsel and play an active role in the litigation.  In fact, to the contrary, it appears that counsel's main role, relative to plaintiffs, was to recruit class representatives and populate the "fictitious" YRC Investors Group to seek appointment as lead counsel in this case.  On this record, plaintiffs have not shown that counsel will adequately represent the interests of the class under Rule 23(a)(4).

**III.     Conclusion**

For reasons discussed, the Court finds that plaintiffs have not met the requirements of Rule 23(a)(4), i.e. plaintiffs have not shown that proposed representatives and counsel will adequately represent the interests of absent class members.  In light of this ruling, the Court does not address whether plaintiffs can satisfy the requirements of Rule 23(b)(3).

Because the Court declines to certify a class, only individual claims of plaintiffs remain in the case.  The designation of co-lead plaintiffs and co-lead counsel is therefore no longer necessary.

As discussed, the record suggests that counsel formed YRC Investors Group solely to function as lead plaintiff in this lawsuit.  The Court questions the propriety of such action under the PSLRA.  In light of the decision not to certify a class, however, the issue appears to be moot in this case.  Because YRC Investors Group is not a legal entity, the Court questions whether it can sue as a party in the case.  On or before **March 28, 2016,** plaintiffs shall show cause in writing why the Court should not dismiss YRC Investors Group as a party in the case.  Defendants may file a response on or before **April 11, 2016.**

**IT IS THEREFORE ORDERED** that Lead Plaintiffs' Motion For Class Certification ("Motion For Class Certification") (Doc. #111) filed May 29, 2015 be and hereby is

**OVERRULED**.

**IT IS FURTHER ORDERED** that on or before **March 28, 2016,** plaintiffs shall show cause

in writing why the Court should not dismiss YRC Investors Group as a party in the case.  Defendants

may file a response on or before **April 11, 2016.**

Dated this 14th day of March, 2016 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge

41